497 So.2d 1077 (1986)
Marilyn H. FERRARA, Individually and as Natural Tutrix of Her Minor Daughter, Carolyn Ann Ferrara
v.
R.H. STRAIN, Individually and as Administrator of the Estate of His Minor Son, William F. Strain, ABC Insurance Company, Utica Mutual Insurance Company, Superior Pontiac GMC, Inc. d/b/a Superior Honda, and DEF Insurance Company.
No. 86-CA-267.
Court of Appeal of Louisiana, Fifth Circuit.
November 10, 1986.
Rehearing Denied December 17, 1986.
Writ Denied February 6, 1987.
*1078 Robert E. Kerrigan, Jr. David P. Gontar, Deutsch, Kerrigan & Stiles, New Orleans, for appellants.
Robert M. Johnston, Johnston & Duplass, New Orleans, for appellees.
Before BOWES, GAUDIN and GRISBAUM, JJ.
GRISBAUM, Judge.
This appeal arises out of an indemnification dispute. We set aside the judgment of the trial court.
The procedural history shows that, after a settlement with its insured, the liability carrier (Hanover Insurance Company-appellee) on the one hand and its agent (the Edwards Agency, Inc.-appellant) and its errors and omissions carrier (Utica Mutual Insurance Company-appellant) on the other hand dispute who must indemnify whom for what amount of the settlement.
We are called upon to determine three issues:
(1) Whether the trial court erred, as a matter of law, in concluding that the insurance company (Hanover Insurance Company), which issued a temporary binder and subsequently rejected the application for insurance, has no statutory duty to notify the applicant (the insured) of its rejection;
(2) If it erred, whether notice to the agent of the insured by the insurer constitutes notice to the insured; and
(3) Whether the trial court erred in failing to find that the insurance company (Hanover Insurance Company) owes indemnification to its agent (Edwards Agency, Inc.) or to his errors and omissions carrier (Utica Mutual Insurance Company).

FACTS
The undisputed facts reveal that on October 22, 1982 an auto accident occurred which severely injured Carolyn Ferrara, *1079 daughter of the insured, Ms. Marilyn H. Ferrara. On September 8/9, 1982, Ms. Ferrara had purchased a new Honda Prelude and telephoned her agent, Mr. Tommy Edwards, to obtain insurance coverage. He had taken the application and "bound" coverage with Hanover. Thereafter, Hanover had rejected the application because of Ms. Ferrara's driving record. The rejection had been accompanied by a letter to Edwards, which stated, in part, "We are binding coverage until 10/1/82, 12:01 A.M. so that you can replace coverage." Hanover never received the premium for the policy. Edwards subsequently forgot about Hanover's rejection and did nothing further until over a month after the binder lapsed. Thus, the binder coverage purportedly lapsed on October 1, 1982, 22 days before the accident. As of the time of the accident, no notice of rejection had been sent by Hanover to Ms. Ferrara. Edwards himself did not inform her of any cancellation until after the accident.

ANALYSIS
In addressing the initial issue, we note La.R.S. 22:636, in part, states:
A. Cancellation by the insurer of any policy which by its terms is cancellable at the option of the insurer, or of any binder based on such policy, may be effected as to any interest only upon compliance with any or all of the following:
(1) Written notice of such cancellation must be actually delivered or mailed to the insured or to his representative in charge of the subject of the insurance not less than twenty days prior to the effective date of the cancellation except where termination of coverage is for nonpayment of premium.
The trial court found that this "statute [La.R.S. 22:636] is not applicable to the facts ... because the evidence shows that no policy of insurance was ever issued, and the binder expired by its own term, three weeks before the accident." We note that the binder, as is the general rule, initially was verbal and indefinite as to its term. Only later, upon rejecting the application, did Hanover purport to place a termination date, October 1, 1982, on the coverage. In the wake of its decision, Hanover informed only Edwards, not the applicant-insured, of its action.
In construing the statutory provisions in light of these facts, we conclude the trial court's reasoning overlooks the reality that, under La.R.S. 22:631, a binder temporarily binds insurance "pending the issuance of the policy." Although both sections 631 and 636 are written in terms anticipating issuance, it seems clear that a binder must still exist pending the contingency of "nonissuance," for, by its nature, a binder issues pending either eventuality. It likewise seems apparent that where, as here, the insurer ultimately rejects the policy application, the previously issued binder was nevertheless "based on such policy" so as to be brought within the ambit of the R.S. 22:636 notice requirements. That is, the binder incorporated the terms of a contemplated standard policy even though the insurer ultimately chose to reject the risk. This interpretation, in contrast to that suggested by the district court, accords with the jurisprudentially recognized purpose for notice of cancellation: "to make known to the insured that his policy is being terminated and to afford him sufficient time to obtain other insurance protection." Broadway v. All-Star Ins. Corp., 285 So.2d 536, 539 (La.1973). Moreover, we find that, since automobile liability coverage is now statutorily required in Louisiana, it is a matter of public policy that an insured must be given notice that his required coverage is being withdrawn.
Given this conclusion, we are compelled to decide whether in this instance the notice to the agent by the insurer can be imputed to the applicant-insured. In deciding this issue we are guided by our jurisprudence in Jordan v. Commercial Union Fire Ins. Co. of New York, 167 So. 227, 231 (La.App.Orl.Cir.1936), which states the rule of law as follows: "the authority to procure insurance or `to keep up' insurance does not, without special authority as to cancellation, authorize the acceptance of notice of cancellation." The opinion also *1080 implies that the burden is on the insurance company to prove any claimed agency relationship between the agent/broker and the insured. More recently, our Supreme Court has stated the burden in a broader sense thus: "[W]here the insurer defends on the ground of cancellation, the insurer carries the burden of establishing the facts which relieve or limit its liability." Skipper v. Federal Ins. Co., 238 La. 779, 116 So.2d 520, 524 (1959).
The record shows Ms. Ferrara testified that prior to taking delivery of her new Honda Prelude on September 10, 1982, she called Mr. Tom Edwards to obtain coverage. The Edwards Agency had previously handled her family's personal and business insurance. The agency quoted a price and told her she was covered. She never received any indication prior to the October 22 accident that Hanover had turned down her policy application. Had she known this she would not have driven her car. The first discussion of rejection to which Ms. Ferrara was privy was that by a Utica adjuster, who spoke with her after the accident.
Additionally, Mr. Edwards testified he represented about 12 insurance companies in 1982, four of which wrote auto liability policies. In a letter dated September 23, 1982, Hanover informed Edwards that it had rejected the Ferrara policy application but would bind coverage until October 1 at 12:01 a.m. Edwards concededly neglected to place coverage elsewhere within the communicated binder period. He testified that "I just blew it."
From these record facts, we see an indication that while there was some history of insurance dealings between Edwards and the Ferrara family, no specific history of insurance dealings with Ferrara herself is revealed. Nor is there any indication that Ferrara ever authorized Edwards to "manage" her insurance. It is apparent that as far as she knew she had asked for coverage and Edwards had placed coverage, without difficulty. She never even knew that Edwards should have been shopping for coverage upon Hanover's rejection, for she is emphatic she never had any inkling of the rejection. Under these circumstances, it seems apparent that no authority to cancel or to receive notice of cancellation was bestowed on Edwards. On the other hand, Hanover, which had an agency agreement with Edwards, demonstrates no reason why it should have considered Edwards to be more Ferrara's agent than its own agent. Accordingly, we find the record does not show any course of dealing or express authority which would support imputing authorization for Edwards to accept notice on behalf of Ferrara.
We now turn to decide whether the trial court erred in failing to find that Edwards-Utica was entitled to indemnification from Hanover. From the evidence adduced at trial, the record shows the Hanover-Edwards agreement states, in part:
a. The Company agrees to defend and hold the Agent harmless from claims against it caused by Company error or omission in the preparation, handling or service of direct billed policies.
b. The Company agrees to hold the Agent harmless against any civil liability for damages and expenses, including the cost of defending suit, which the Agent becomes obligated to pay as a direct result of the Company's failure to comply with the requirements of any law or regulation. In no case shall the Company be liable hereunder for actual, special, exemplary, or consequential damages for, and to the extent that, the Agent caused, contributed to or compounded any such liability.
We think it clear that in accordance with subsection b of the Hanover-Edwards agreement Hanover is not liable for damages to the extent that the agent "caused, contributed to or was the compounder of any such liability." Even though the Edwards Agency was not specifically instructed by Hanover to notify the insured, certainly Edwards compounded Hanover's failures by doing nothing regarding notification *1081 for over three weeks. Moreover, we find that Edwards, like Hanover, was remiss in performing independent duties he owed Ferrara. Surely after Hanover rejected the risk and so informed Edwards, he began acting in a fiduciary capacity vis a vis Ferrara. In such actionmore precisely, inactionEdwards violated duties to Ferrara. Accordingly, the trial court was correct in deciding that Edwards-Utica is not entitled to indemnification from Hanover.
For the reasons assigned, the judgment of the trial court requiring the Edwards Agency, Inc. and its insurer to pay $250,000 to Hanover Insurance Company is set aside. All costs of this appeal are to be assessed against the appellees.
SET ASIDE.