526 So.2d 829 (1988)
James D. NORRED, Plaintiff/Appellant,
v.
COMMERCIAL UNION INSURANCE COMPANY, et al., Defendant/Appellee.
No. 19538-CA.
Court of Appeal of Louisiana, Second Circuit.
May 4, 1988.
Rehearing Denied May 26, 1988.
Culpepper, Teat, Caldwell & Avery by Bobby L. Culpepper, for plaintiff/appellant.
John C. Blake, for Hodge Ins. Co.
Steve H. Beadles, for Commercial Union.
*830 Before HALL, SEXTON and NORRIS, JJ.
HALL, Chief Judge.
On March 30, 1986 plaintiff James D. Norred's house burned to the ground. The issue in this case is whether a homeowner's insurance binder issued to Mr. Norred by defendant Hodge Insurance Agency and underwritten by defendant Commercial Union Insurance Company was still in effect on the date of the fire. The trial court found that the plaintiff did not have insurance coverage on the date of the fire and that the lack of coverage was not the fault of either defendant. Judgment was entered in favor of defendants and plaintiff appealed. We affirm.[1]
The Facts
On January 24, 1986 Norred went to the Hodge Insurance Agency to discuss getting insurance coverage on his house which was located in Jackson Parish, Louisiana. DeLane Pullig, Hodge's office manager, handled Norred's application for insurance which reflected the following requested coverages:

$ 30,000.00 dwelling
$ 3,000.00 other structures
$ 15,000.00 contents
$ 6,000.00 loss of use
$100,000.00 personal liability

It was stipulated at trial that only the dwelling and contents coverage were at issue.
Pullig testified that she told Norred that his application would be submitted to Commercial Union but that a "binder" would go into effect that day. On the top of the application is the statement: "The following Company hereby binds insurance in favor of the insured named below from 12:01 STANDARD TIME of the "EFFECTIVE DATE" and terminating at 12:01 STANDARD TIME on the 30th day following such date for the coverages and limits of liability indicated below."
The application form, which does not require the signature of the applicant, was a carbon set with three copiesone for the customer, one for the agency, and one for the company. Pullig testified that she does not know if she gave Norred a copy of the application but that it was standard procedure to give a copy to the insured when, as in this case, there was no mortgagee involved. Norred testified that he understood that his insurance had to be approved by Commercial Union and that it was not a guaranteed thing but that Pullig did not tell him when the binder would expire and that he did not remember Pullig giving him a copy of the application. He stated, "Well, I'm not saying I got one and I'm not saying I didn't."
Pullig testified that a binder is "automatically" good for 30 days but that coverage continues until Commercial Union finishes processing the application which may take more than 30 days. Pullig testified that it was not standard procedure for Commercial Union to notify the agency when a binder was extended past 30 days.
The first communication that Pullig received from Commercial Union regarding Norred's application was by way of a memo dated March 12, 1986 from Derrick Davis, the Commercial Union underwriter who processed Norred's application. The memo indicated that Norred's application had been rejected because it did not meet the company's minimum coverage level of $40,000.00 on a dwelling. The memo directed the agency to terminate the binder by March 27, 1986 but also stated, "If consideration to write at $40,000.00 is desired, a replacement cost worksheet will be necessary.... Unless we receive a reply by 3/27/86, we will assume coverage is no longer desired."
Pullig testified that there was a handwritten notation on the memo in her handwriting which indicated that a letter had been sent to Mr. Norred on March 18, *831 1986.[2] Pullig testified that she had in fact mailed a letter to Norred on March 18, 1986 explaining Commercial Union's position and notifying him that unless further action was taken the binder would expire on March 27, 1986. Although she testified that normally she would keep a copy of such a letter, she was unable to produce a copy of the letter, which was sent by ordinary mail and was neither registered nor certified. Rex Johnson, the president of Hodge, testified that he spoke with Norred shortly after the fire and that Norred admitted to receiving the letter but stated that the letter had burned in the fire. At trial Norred denied receiving the letter and denied telling Johnson that the letter had burned in the fire. Johnson's version of the conversation was corroborated by the testimony of his brother, Frank Johnson, secretary-treasurer and an agent for the agency, who was present during the conversation.
Pullig testified that a day or two after she wrote the letter to Norred she saw him in the bank where the agency office was located and asked him if he had gotten the letter. She stated that he said no but that he had not been to the post office to check his mail. Pullig stated that she then explained Commercial Union's position and told Mr. Norred that his coverage would expire on March 27 unless he gave further instructions. She said that he replied that he would get back in touch with her prior to March 27th.
Norred's testimony regarding this conversation was that he went to the agency on March 24 with a friend, Hansford Maxwell, and that while Maxwell was applying for insurance on his truck, he asked Pullig about his house insurance. He testified that she said that the $32,000 (sic) policy had been cancelled but that Commercial Union would insure his home for $40,000 less some of the contents. He testified that he replied "You're gonna have to give me a while to discuss it with my wife, because we may want everything in it covered." Norred testified that Pullig did not tell him that the insurance coverage was going to run out at any particular time or give him a deadline. He testified that she was working with Maxwell on his truck insurance and that she said she was busy and could not tell him the dates but would send him a letter. He later stated that she said she had already sent the letter.
Mrs. Norred testified that no letter was received from Hodge. She stated that her husband told her he had talked to "the lady", that she did not have time to explain it all to him, but that the company would cover it for more than he had applied for and that she would send them a letter about what coverage they could get. Mrs. Norred said that she and Mr. Norred intended to increase the insurance because they needed insurance on the house but that they did not take any action because they were waiting for the letter. She testified that her husband did not tell her that the insurance was going to run out by a particular date.
Norred testified that if he had known that the binder was going to run out, he would have renewed it right then. On cross-exam Norred admitted, however, that he knew the insurance would expire soon and that Pullig had told him that he did not have long. He also admitted that he did not tell Pullig to put the policy in force on the day he spoke with her. He also stated that he was "about sure" that he spoke with his wife on the same day he spoke with Pullig but that he did not call the agency and say he wanted the coverage. When asked why he did not call the agency he responded:
A. Well, I thought I was covered all the time with the binder. I thought I was covered, and I was waiting `til my social security check come in where I'd have the money to take it.
Q. I see. In other words, it was your understanding once you decided to take the coverage, you were going to have to pay a premium.
A. Well, that is what I understood.
Q. Okay. When do you get your social security check? ...

*832 A. April the 3rd.
Q. So then, you would have gotten your social security checks four days after the fire?
A. That's right.
Q. And some 8 days after the binder expired?
A. That's right.
Q. Were you willing to run a little risk there? About 7 days worth of risk to get your social security check.
A. Well, it was either that or borrow the money.
Maxwell testified that he and Norred went to the Hodge Agency on March 24 and that while there he overheard a conversation between Norred and Pullig. He testified that Pullig told Norred that she needed to see him in a few days about his insurance and that she would send him a letter in a few days. Maxwell testified that Pullig did not tell Norred that he had to do something immediately about his insurance.
Pullig testified that she wrote the auto policy for Maxwell after the date she had the conversation with Norred and that she did not recall Norred being present when she spoke with Maxwell about his auto insurance. Maxwell's auto insurance application was dated March 21, 1986, not March 24, 1986, and Rex Johnson testified that he spoke with Maxwell on March 21, 1986 and that Maxwell was there to get auto insurance on his truck. Defendants point out that Norred and Maxwell have been friends for years and are related by marriage.
Norred did not contact Pullig prior to March 27, 1986 nor did she contact him prior to that date and on March 30, 1986 Norred's house burned down. Norred testified that he found out that he did not have insurance the morning he reported his loss to Hodge.
Trial Court's Opinion
In written reasons for judgment, the trial court found that Norred had sufficient notice that the coverage afforded him by the binder lapsed on March 27, 1986; that plaintiff did not have coverage on the date of the fire; and that plaintiff's failure to have coverage was not the fault of either defendant. The trial court rejected plaintiff's attempt to hold the defendants liable on the theory that no notice of "cancellation" of the binder was given to plaintiff. The court found that the binder "expired" rather than being "cancelled" and therefore the notice of cancellation provisions found in LSA-R.S. 22:636 were not applicable.
Assignments of Error
On appeal plaintiff-appellant asserts the following assignments of error:
1. The district court erred, as a matter of law, in concluding that there was no coverage on the date of the fire.
2. The district court erred, alternatively, in stating that if there was no coverage, it was not the fault of either defendant.
3. The district court erred, as a matter of law, in finding that the binder in question was not "Cancelled", but "Expired".
4. The district court erred, as a matter of law, in finding that Mr. Norred had sufficient notice that the coverage afforded him by the binder lapsed on March 27, 1986.
Liability of Commercial Union
On appeal plaintiff contends that the binder remained in force as of the date of the fire because Commercial Union did not comply with the LSA-R.S. 22:636 notice of cancellation provisions.[3],[4] This section provides in part:

*833 A. Cancellation by the insurer of any policy which by its terms is cancellable at the option of the insurer, or of any binder based on such policy, may be effected as to any interest only upon compliance with either or both of the following:
(1)(a) Written notice of such cancellation must be actually delivered or mailed to the insured or to his representative in charge of the subject of the insurance not less than twenty days prior to the effective date of the cancellation except where termination of coverage is for nonpayment of premium.
This section also provides, however:
E. This Section shall not apply to temporary life insurance binders nor to contracts of life or health and accident insurance which do not contain a provision for cancellation prior to the date to which premiums have been paid, nor to the contracts provided in Part XV of this Chapter. (emphasis supplied)
Part XV of Chapter 1 of the Insurance Code, LSA-R.S. 22:691 et seq., deals with the "Standard Fire Policy".
Plaintiff argues that the LSA-R.S. 22:636 notice of cancellation provisions apply to this case because the application-binder was not merely for a standard fire insurance policy but rather a "homeowner's policy" which included other coverages in addition to the standard fire insurance policy. He argues therefore that the binder in this case should not be treated as a standard fire insurance policy for purposes of LSA-R.S. 22:636(E).
Commercial Union, on the other hand, contends that the binder was based on a fire insurance policy and therefore notice of cancellation was not required. Commercial Union also contends that the binder `expired' on March 27, 1986 as opposed to being cancelled and therefore notice of cancellation was not required. It further contends that regardless of the necessity of notice of cancellation, plaintiff was given ample warning of the expiration date of the binder.
Although Norred's application for insurance requested coverage for dwelling, other structures, contents, loss of use and personal liability coverage, the loss he suffered was a fire loss and the portion of the binder that he is trying to recover under is that portion based on the Standard Fire Policy. We hold that the 20-day notice of cancellation provision found in Section 636 is not applicable to this binder, the relevant portion of which is based on a fire insurance policy, but we further hold that notice of some kind to the insured is necessary to complete in fact the rejection of the application by the insurance company and thereby terminate coverage where, as in this case, the binder has been extended for an indefinite period past its stated termination date. See Ferrara v. Strain, 497 So.2d 1077 (La.App. 5th Cir.1986); Quindlen v. The Prudential Insurance Company of America, 482 F.2d 876 (U.S. 5th Cir., 1973).
A binder is used to bind insurance temporarily pending the issuance of the policy, LSA-R.S. 22:631, or, logically, until the rejection of the application and nonissuance of the policy. Its purpose is to assure the applicant that he will be insured until the company acts. To hold that the applicant could become uninsured without being notified would defeat the purpose of the binder. The binder in the instant case afforded the plaintiff full insurance coverage from the date that he applied for the policy. By its terms, the binder expired after 30 days, but in this case the binder was extended past its original term because of delays encountered by the insurance company in processing the application. After the original termination date passed, the binder continued in force but was indefinite as to its term. The general rule that no notice of cancellation is required where a policy expires in accordance with its terms does not apply to this case because coverage was extended beyond the stated term for an indefinite period.
Only after plaintiff's application was rejected did Commercial Union specify the new termination date of the binder. At this point the cancellation of the temporary insurance policy could not become effective until the plaintiff was notified. The purpose of notice of cancellation is to make *834 known to the insured that his policy is being terminated and to afford him sufficient time to obtain other insurance protection. Broadway v. All-Star Insurance Corporation, 285 So.2d 536 (La.1973). We hold that the extension of the binder past its original 30-day term gave rise to an obligation on the part of the insurance company to communicate to the applicant the rejection of his application and a new expiration date of the temporary insurance policy, affording the applicant a reasonable time to obtain other insurance.
The next question then is whether Commercial Union discharged its obligation to notify plaintiff that the binder had been cancelled. Where an insurer defends on the ground of cancellation, the insurer carries the burden of establishing the facts which relieve or limit its liability. Skipper v. Federal Ins. Co., 238 La. 779, 116 So.2d 520 (1959); Ferrara v. Strain, 497 So.2d 1077 (La.App. 5th Cir.1986). After deciding to reject plaintiff's application, Commercial Union informed Hodge of its action with instructions to terminate coverage by March 27. It did not inform the plaintiff. Commercial Union's liability will then depend on whether defendants proved by at least a preponderance of the evidence that it adequately notified the plaintiff that the binder was going to expire on March 27, 1986.
Pullig testified that she mailed plaintiff a letter telling plaintiff that the binder would expire on March 27, 1986. She could not produce a copy of this letter but the handwritten notation on the Davis memo is some corroboration that a letter was sent. Pullig also testified that she notified Norred in person of the date the temporary insurance coverage would lapse. Norred admits that Pullig told him he needed to do something about his insurance within a few days but denies that she mentioned a specific expiration date and denies ever receiving a letter from Pullig. This denial, however, was refuted by the testimony of Rex Johnson and his brother, both of whom testified that Norred admitted he received the letter. The trial court resolved the conflicting testimony against the plaintiff and found that plaintiff had received sufficient notice of the expiration date of the binder.
The standard for appellate review of a trial court's findings of fact is that these findings are entitled to great weight on appeal and should be upheld unless examination of the record as a whole demonstrates that the trial court was clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Ouachita Parish Policy Jury v. Wright, 446 So.2d 835 (La. App. 2d Cir.1984). Our review of the record indicates that the trial court was not clearly wrong in finding that plaintiff had sufficient notice that the binder would terminate on March 27, 1986. The court was justified in accepting the testimony of Pullig that she sent a letter to plaintiff advising him of the coverage expiration date and the testimony of the Johnsons that plaintiff admitted receiving the letter, as opposed to the testimony of the plaintiff that he never received the letter. More probably than not, the letter was received by plaintiff no later than March 21, which gave him six days prior to the expiration date and nine or ten days prior to the fire to procure other insurance protection, a reasonable time for notification of rejection of an application for insurance and termination of coverage under a temporary binder. Coverage under the binder terminated prior to the fire loss and Commercial Union has no liability.
Liability of the Hodge Agency
Plaintiff contends that he relied upon the Hodge Agency to obtain the coverage and that Hodge was negligent in permitting the binder to expire without notice to plaintiff and without placing the coverage elsewhere. Hodge contends that plaintiff was fully informed of the "expiration" date of the binder prior to the loss and simply failed to tend to his business or take any action which would have permitted the agency to replace the coverage.
An insurance agent who undertakes to procure insurance for another owes an obligation to his client to use reasonable diligence in attempting to place the *835 insurance requested and to notify the client promptly if he has failed to obtain the requested insurance. The client may recover from the agent the loss he sustains as a result of the agent's failure to procure the desired coverage if the actions of the agent warranted an assumption by the client that he was properly insured in the amount of the desired coverage. In order to recover for loss arising out of the failure of an insurance agent to obtain insurance coverage, the plaintiff must prove: (1) an undertaking or agreement by the insurance agent to procure insurance; (2) failure of the agent to use reasonable diligence in attempting to place the insurance and failure to notify the client promptly if he has failed to obtain the insurance; and (3) the actions of the agent warranted an assumption by the client that he was properly insured. Smith v. Millers Mutual Insurance Company, 419 So.2d 59 (La.App. 2d Cir.1982)
Plaintiff's claim against the insurance agency must likewise fall on the finding that the agency notified him of the extended expiration date of the binder coverage. After notice of the extended expiration date, plaintiff was not warranted in assuming that he was insured beyond that date. The insurance agency is not liable to the plaintiff for his loss.
Decree
For the reasons assigned, the judgment of the trial court in favor of Commercial Union Insurance Company and Hodge Insurance Agency is affirmed. All costs of this appeal are assessed against plaintiff-appellant.
Affirmed.
ON APPLICATION FOR REHEARING
Before HALL, MARVIN, SEXTON, NORRIS and LINDSAY, JJ.
Rehearing denied.
NOTES
[1] This is the second case to come before this court concerning expiration or cancellation of an insurance policy issued to plaintiff Norred, each involving the factual issue of whether notice was received by him. In the previous case, we reversed the district court decision, found that Norred did not receive notice of non-renewal, and held there was insurance coverage. See Norred v. Employers Fire Insurance Co., 460 So. 2d 1147 (La.App. 2d Cir.1984).
[2] The notation read: "Letter to M Norred 3-18-86"
[3] The statutory law in the Insurance Code applicable to disputes under insurance policies is found primarily in Part XIV, The Insurance Contract (LSA-R.S. 22:611-669) and Part XV, Standard Fire Policy (LSA-R.S. 22:691-695).
[4] Appellant also argues that the cancellation provisions of LSA-R.S. 22:636.3 apply to this case. This section applies only to policies in which membership in some organization is a qualifying criteria for coverage. It has no application to this case other than perhaps by analogy to its cancellation provisions.