527 So.2d 347 (1988)
DAVIS INDUSTRIES, INC., Davis Ready Mix, Inc., and D & S Aggregate, Inc.
v.
WESTERN PREFERRED CASUALTY CO., Tri-State General Agency, Inc., Qualified Service, Inc. d/b/a Brinkley & West, Corroon & Black of Louisiana, Inc., Karcher C. Wild, and Albert G. Batten.
No. 87-CA-846.
Court of Appeal of Louisiana, Fifth Circuit.
May 16, 1988.
Rehearing Denied July 15, 1988.
Jerome M. Volk, Jr., DeMartini, LeBlanc, D'Aquila & Volk, Kenner, for plaintiffs-appellants.
Dermot S. McGlinchey, Frederick R. Campbell, Eve Barrie Masinter, McGlinchey, Stafford, Mintz, Cellini & Lang, Gordon F. Wilson, Jr., David Bowling, Friend, Wilson & Draper, New Orleans, for defendants-appellees.
Before BOWES, GRISBAUM and GOTHARD, JJ.
GRISBAUM, Judge.
This appeal relates to certain "insurance binder" coverage. The plaintiff concrete companies through their president sought to procure a specific liability coverage called "ripping and tearing" insurance to cover, in part, expenses resulting from substandard concrete. The plaintiff was told by its insurance agent that it (the agent) had a binder in effect for the plaintiff for such coverage, the agent apparently having obtained the binder from yet another agent/broker. A short time thereafter, the plaintiffs suffered a loss that apparently would have been covered, in part, by the rip and tear binder. The insurer, however, denied coverage and is now insolvent. The agent/broker likewise denies ever issuing a binder. After a judge trial, judgment was rendered against the plaintiff, who now appeals. We set aside and remand.
ISSUE
Whether the trial court erred, as a matter of law, in finding that no contract of insurance existed at the time of the plaintiff's loss.
FACTS
In late 1980, Edson Davis, president of Davis Industries, Davis Ready Mix (both concrete suppliers), and D & S Aggregate (a hauling operation), was approached by a friend who apparently asked that he transfer his companies' insurance business to Corroon & Black of Louisiana, Inc., an insurance agency. Beginning in 1981, as various policies expired, Davis did so, dealing primarily with Mr. Karcher Wild. At issue here are the comprehensive general liability (CGL) policy and a related coverage termed rip and tear coverage. Mr. Davis explains the coverage he discussed with Wild as follows:
A. I told him I wanted to be totally protected. If I went out and provided the concrete for a building downtown and it goes up a floor at a time and I had a problem on it where I would have to tear it out I wanted to be covered for that and Mr. Wild *348 explained to me, he said quote son there is a type of coverage that will do that but there is no coverage that will cover you on the concrete. You will have to put that back but if you went out here and poured a house slab and it did not come up to strength you could get coverage that would cover you for the tearing out of this house slab and the replacement of it but you would have to put the concrete back. I would have to furnish the concrete myself and so I said all right and so we started developing on that and he said he was going to work on it so this was a little ahead of the expiration date and so forth and he got back with me later on at the time when this was developing and told me I did have coverage. He was able to get the coverage and so forth and he was issuing a binder to me.
Q. All right now, at that time did you have a term for this coverage that he was talking to you about?
A. I was referring to the ripping and tearing insurance.
Q. Did you refer him or tell him at anytime about the ripping and tearing coverage that was available?
A. Yes[,] I told him I was familiar with the concept. That I had read about it in a trade publication somewhere and that I wasn't sure but I thought the Louisiana Ready Mix Association, you know, had a program such as this and he said he was, at the particular time, he was familiar with insurance that would cover me for the thing that I wanted but he wasn't familiar with the term ripping and tearing and I told him, you know, not being knowledgeable in that field but that it was kind of appropriate because you had to rip it out and tear it out and put it back in. Anyway[,] he got back to me and told me that later this was sometime maybe three weeks or so, maybe a month later, that he was able to give me the type of coverage that I wanted and I told him fine, we wanted it and he also told me at the time that it was not goingthe costs is always got a basis in any of this but it was not going to be prohibitively expensive and that he would bind me on it and he issued a binder to me.
Mr. Wild confirms that he had these discussions with Mr. Davis.
The record shows Wild was dealing with Mr. Albert Gary Batten, president of Qualified Service, a general insurance agency and service line brokerage. Batten, in turn, bound at least part of the disputed coverage with Western Preferred Casualty Company, an insurer, now defunct and severed from this suit. Batten concedes ripping and tearing insurance was discussed; however, he says he bound only part of the coverageincluding products liability, completed operations, and CGL elementseffective July 7, 1981. Western Preferred rejected the rip and tear coverage and informed his office by telephone at a date he does not recall. Batten says he informed Wild on July 7 that rip and tear coverage was not available. Wild was of the view that the products liability and completed operations extensions of CGL insurance might encompass rip and tear coverage. Batten says he told Wild several times that rip and tear coverage was not available, at least through his agency. Batten says he never met or spoke with Davis during or after the rip and tear discussions.
In early August 1981, the Davis companies suffered a loss in a project at the Good Hope Refinery. Rip and tear insurance would probably cover at least part of this loss.
ANALYSIS
La. R.S. 22:636, in part, states:
A. Cancellation by the insurer of any policy which by its terms is cancellable at the option of the insurer, or of any binder based on such policy, may be effected as to any interest only upon compliance with either or both of the following:
(1)(a) Written notice of such cancellation must be actually delivered or mailed to the insured or to his representative in charge of the subject of the insurance *349 not less than twenty days prior to the effective date of the cancellation except where termination of coverage is for nonpayment of premium. (emphasis added).
We see, in its judgment, the trial court stated the following:
The Court is of the opinion that the law and evidence are in favor of dismissing plaintiffs' suit because there was no agreement on the wording and price of the insurance contract plaintiff[s] sought. Additionally, plaintiff was not damaged by assuming he had coverage because there was no proof that such coverage exists within the insurance industry.
This Court, in Ferrara v. Strain, 497 So.2d 1077 (La.App. 5th Cir.1986), writ denied, 501 So.2d 238 (La.1987), was faced with a somewhat similar factual scenario. There the trial court found La. R.S. 22:636 was not applicable because the evidence showed that no policy of insurance was ever issued and that an issued binder had expired by its own terms three weeks prior to the accident in question. Upon review, this Court found, as a matter of law,
that the binder, as is the general rule, initially was verbal and indefinite as to its term. Only later, upon rejecting the application, did Hanover [the insurance company] purport to place a termination date ... on the coverage.

. . . . .
In construing the statutory provisions in light of these facts, we conclude the trial court's reasoning overlooks the reality that, under La. R.S. 22:631, a binder temporarily binds insurance "pending the issuance of the policy." Although both sections 631 and 636 are written in terms anticipating issuance, it seems clear that a binder must still exist pending the contingency of "nonissuance," for, by its nature, a binder issues pending either eventuality. It likewise seems apparent that where, as here, the insurer ultimately rejects the policy application, the previously issued binder was nevertheless "based on such policy" so as to be brought within the ambit of the R.S. 22:636 notice requirements. That is, the binder incorporated the terms of a contemplated standard policy even though the insurer ultimately chose to reject the risk. This interpretation, in contrast to that suggested by the district court, accords with the jurisprudentially recognized purpose for notice of cancellation: "to make known to the insured that his policy is being terminated and to afford him sufficient time to obtain other insurance protection." Broadway v. All-Star Ins. Corp., 285 So.2d 536, 539 (La.1973). Moreover, we find that, since automobile liability coverage is now statutorily required in Louisiana, it is a matter of public policy that an insured must be given notice that his required coverage is being withdrawn.
Id. at 1079.
From the record facts presented, there is uncontroverted testimony by the plaintiff (Davis) stating there was a binder in effect at that time of the Good Hope Refinery accident. Davis' agent, Wild, agrees. Moreover, it nowhere appears that Davis was ever notified of any cancellation of the binder. Therefore, we must conclude that an uncancelled binder existed at the time of the accident in which the claimed loss was sustained. The trial court erred as a matter of law in finding otherwise.
Granting that a binder was in effect at the time of the plaintiff's loss, it necessarily follows that a determination be made as to whether it was authorized by Mr. Batten. Such a determination necessitates a credibility call, which lies, commonsensibly, within the discretion of the trial judge and should not be made at the appellate level. We likewise suggest there must be a definitive finding as to whether the loss suffered was covered by the binder, this issue not having been reached by the trial judge in its present judgment. In light of these findings and observations, we must remand the matter to the trial court for it, in light of this opinion and its directives, to evaluate the existing testimony and evidence of record and to determine if any additional testimony or evidence is necessary to a decision.
*350 For the reasons assigned, the judgment of the trial court is set aside, and the matter is remanded for further proceedings.
REMANDED AND SET ASIDE.