532 So.2d 956 (1988)
John PAYNE for Himself and as Natural Tutor for Steven Payne and Jennifer Payne, Lisa Payne, and Nancy Payne
v.
OLD HICKORY INSURANCE COMPANY, A.J. Adolph, Automotive Protection Service.
No. 88-CA-225.
Court of Appeal of Louisiana, Fifth Circuit.
October 12, 1988.
Rehearing Denied November 17, 1988.
Writ Denied January 20, 1989.
*957 Douglas St. Romain, Metairie, for plaintiffs-appellees.
Steven J. Koehler, Metairie, for defendant-appellant Old Hickory Cas. Ins. Co.
Lynn L. Lightfoot, Metairie, for defendant-appellant Sentry Ins. A Mut. Co.
Before KLIEBERT, WICKER and GOTHARD, JJ.
KLIEBERT, Judge.
This appeal raises issues as to two separate insurance carrier's exposure under liability and uninsured motorist policies for plaintiffs' personal injuries arising out of two separate accidents, and the assessment of penalties and attorney fees against the uninsured motorist carrier for failure to pay the claims.
The first accident occurred in Hancock County, Mississippi on April 8, 1985 when a vehicle owned and operated by Mario Quijano collided into the rear of plaintiffs' vehicle. The second accident occurred in Metairie, Louisiana on July 19, 1985 when, after executing a U-turn on Veterans Boulevard, plaintiffs' vehicle was struck in the rear by a vehicle being operated by Ernest Glass, Jr.
The plaintiffs brought an action alleging that Old Hickory Casualty Insurance Company provided coverage under their uninsured/underinsured motorist policy for plaintiffs' personal injuries arising out of both accidents. In response Old Hickory filed a third party petition against Sentry Insurance A Mutual Company alleging it to be the public liability insurer of Quijano and seeking reimbursement for any amount for which it might be cast in judgment for plaintiffs' injuries arising out of the first accident. Also, in its answer Old Hickory denied its policy provided uninsured/underinsured coverage and hence denied liability for plaintiffs' claims arising out of the second accident. Plaintiffs then amended their petition to make Sentry a co-defendant.
The trial court found Sentry was Quijano's liability insurer and cast it in judgment for plaintiffs' first accident claims, the total of which was for amounts less than the policy limits. It also found Old Hickory provided uninsured/underinsured coverage and cast it in judgment for plaintiffs' personal injuries arising out of the second accident. Additionally, the trial court found Old Hickory was arbitrary and capricious in failing to pay the claims and, accordingly, assessed Old Hickory with penalties and attorney fees.
On appeal Sentry argues the judgment against it should be reversed for two reasons: (1) the judgment is a nullity because Sentry was not cited or served and filed no answer to plaintiffs' demand, having appeared at the trial solely in defense of the third party petition filed against it by Old Hickory, and (2) the trial court erred in failing to hold that a public liability insurance binder issued to Mario Quijano was void ab initio because the check in payment of the premium was returned marked "account closed." For the reasons hereinafter stated under the caption "The Liability of Sentry" we affirm the trial court's judgment against Sentry.
On appeal Old Hickory contends the trial court erred in casting it in judgment because: (1) plaintiffs waived in writing uninsured/underinsured motorist coverage at the time the policy was issued, and (2) the plaintiffs have failed to meet their burden of showing Ernest Glass, Jr., the tort-feasor, *958 was uninsured. Additionally, Old Hickory contends it was not arbitrary and capricious in defending this suit and hence should not have been cast for penalties and attorney fees. For the reasons hereafter stated under the caption "The Liability of Old Hickory" we affirm the judgment against Old Hickory.
THE LIABILITY OF SENTRY
On appeal, and for the first time, Sentry contends it participated in the trial solely as a third party defendant; hence, under the authority of La.Code Civ.Proc. Ann. art. 2002, the judgment against it should be reversed as an absolute nullity because it was not cited or served with a copy of the amended main demand filed by the plaintiffs. Although counsel for Sentry's appreciation of the law is correct, the record does not support counsel's contention it made no appearance in the action as a defendant.
We note that at the commencement of the trial, after establishing Sentry was a third party defendant, the court in an unrelated colloquy asked counsel for Sentry the question "All right and you're a defendant, Sentry Insurance, right?", and counsel replied "That's correct." (Record at 160.) Moreover, Sentry filed a motion for summary judgment seeking to dismiss the Paynes' demand. (Record at 50.) Sentry also filed an answer and various pleadings directed toward the third party demand of Old Hickory. Such activities constituted a general appearance. La.Code Civ.Proc. Ann. art. 7; Crum v. Spencer-Harris Mach. & Tool Co., 499 So.2d 948 (3rd Cir. 1986) writ denied 501 So.2d 200. Additionally, by seeking relief on appeal other than the dismissal of the suit, Sentry makes a general appearance. See DLJ of Louisiana # 1 v. Green Thumb, Inc., 334 So.2d 801 (3rd Cir.1976). Hence, there is no merit to Sentry's argument.
Sentry next contends that the insurance binder[1] issued to Quijano was conditioned upon payment of the premium due, and that since the check issued as payment was dishonored, no coverage went into effect. Such reasoning disregards the provisions of the Louisiana Insurance Code, which provide in pertinent part:
R.S. 22:636
A. Cancellation by the insurer of any policy which by its terms is cancellable at the option of the insurer, or of any binder based on such policy, may be effected as to any interest only upon compliance with either or both of the following:
(1) Written notice of such cancellation must be actually delivered or mailed to the insured or to his representative in charge of the subject of the insurance not less than five days prior to the effective date of the cancellation.
R.S. 22:636.1
B. A notice of cancellation of a policy shall be effective only if it is based on one or more of the following reasons:
(1) Nonpayment of premium; or
* * * * * *
D. No notice of cancellation of a policy to which Subsections B or C applies shall be effective unless mailed or delivered by the insurer to the named insured at least twenty days prior to the effective date of cancellation; provided, however, that where cancellation is for nonpayment of premium at least ten days notice of cancellation accompanied by the reason therefor shall be given. Unless the reason accompanies or is included in the notice of cancellation, the notice of cancellation shall state or be accompanied by a statement that upon written request of the named insured, mailed or delivered to the insurer not less than fifteen days prior to the effective date of cancellation, the insurer will specify the reason for such cancellation. This subsection shall not apply to nonrenewal.
*959 These notice of cancellation provisions of the insurance code apply to binders for automobile liability insurance, even when no premium is advanced for a policy. Ferrara v. Strain, 497 So.2d 1077 (5th Cir.1986) writ denied 501 So.2d 238. Sentry did not send Quijano a cancellation notice until after the accident. Since the binder issued by Sentry to Quijano was still in effect on the day of the accident, coverage existed for the damages sustained by the Paynes in the first accident. Accordingly, we affirm the trial court's judgment against Sentry.
THE LIABILITY OF OLD HICKORY
LSA-R.S. 22:1406 writes into every automobile liability policy uninsured motorist coverage equal to the limits of liability, unless any insured named in the policy rejects in writing uninsured motorists coverage or selects lower limits. Demolle v. Horace Mann Ins. Co., 491 So.2d 695 (5th Cir.1986). The insurer carries the burden of proving that any insured named in the policy rejected, in writing, the coverage equal to bodily injury coverage or selected lower limits. Demolle v. Horace Mann Ins. Co., supra; Cheadle v. Francois, 470 So.2d 255 (4th Cir.1985). Here Old Hickory contends it should not be responsible for the Paynes' uninsured motorist claims because Payne, or someone representing himself to be Payne, signed a waiver of uninsured motorist coverage.
Frank Adolph, an Old Hickory general agent, testified that a man who identified himself as John Payne came to the offices of Automotive Protection Services and signed the renewal notice for the policy, and the waiver of uninsured motorists coverage. Adolph was unable to positively identify John Payne as the man who signed the forms. Payne testified he neither signed the form nor authorized anyone to sign it on his behalf. A handwriting expert compared the signature on the waiver form with known samples of Payne's and expressed the opinion that Payne had not signed the waiver form. The trial court expressly found that the evidence showed neither Payne nor anyone authorized to handle his affairs signed the waiver form. The record supports that finding. Moreover, we note that the waiver form does not have an "X" or other mark in the box provided to indicate rejection of uninsured motorist coverage, nor is the waiver section dated. See Fishman v. Howard, 447 So.2d 513 (4th Cir.1984). In the absence of a valid written rejection of uninsured motorist coverage, such coverage exists, regardless of whether the Paynes paid a premium for it.
In order to recover benefits under the uninsured motorist provisions of the policy the Paynes had to show that Glass, the tortfeasor in the second accident, was uninsured. Bullock v. Commercial Union Ins. Co., 397 So.2d 13 (3rd Cir.1981); Breaux v. Government Emp. Ins. Co., 369 So.2d 1335 (La.1979).
In an effort to meet the burden, the Paynes offered and the trial court admitted into evidence, over Old Hickory's objection, an affidavit by an official of the Office of Motor Vehicles certifying that a report filed with the office indicated Glass had no liability insurance coverage or other security in effect on the date of the accident in question. Old Hickory contends the trial court erred in admitting the affidavit in evidence because it had not been served with a copy of same fifteen days before the effort to admit the affidavit, as is required by LSA-R.S. 22:1406 D(6)(b). The trial court overruled the objection, citing the interests of justice over technicalities. Old Hickory contends this was reversible error. We do not agree.
LSA-R.S. 22:1406 D does not enumerate sanctions for failure to serve a copy of the affidavit upon all parties. The appropriate sanction was left to the trial court's broad discretion. Under the facts of the present case, we see no abuse of discretion in allowing the introduction of the affidavit. Once the affidavit was introduced, the burden shifted to Old Hickory to show that Glass was insured. Old Hickory offered no evidence on this issue. Thus, the trial court correctly concluded the Paynes were entitled to benefits under the uninsured motorist provisions of the policy.
*960 The trial court assessed $717.45 in penalties and $1,500.00 in attorney fees against Old Hickory for failure to tender a reasonable amount of general damages to the Paynes as a sign of good faith. Old Hickory contends the award was not warranted because good faith defenses existed to the claim. We believe the trial court properly assessed the penalties and attorney fees.
LSA-R.S. 22:658 provides for the award of penalties and attorney fees against an insurer who has failed to pay the amount of any claim within sixty days after receiving "satisfactory proof of loss", when such failure is found to be arbitrary, capricious, or without probable cause. To establish a "satisfactory proof of loss" of an uninsured motorist's claim, the insured must establish that the insurer received sufficient facts which fully apprised the insurer that (1) the operator/owner of the other vehicle was uninsured; (2) and at fault; (3) causing damages; (4) in an established amount. McDill v. Utica Mutual Ins. Co., 475 So.2d 1085 (La.1985).
Here Old Hickory's failure to pay plaintiffs' claims was based on its contentions that Quijano was insured and Payne had signed a waiver of uninsured motorist benefits. Although legitimate reasons existed for not paying plaintiffs' claims arising out of the first accident, there was no reasonable basis for failing to pay the claims arising out of the second accident. Since the waiver form was undated and the square waiving uninsured and underinsured motorist coverage was not checked off, even if signed by Payne, it did not constitute a waiver of the coverage. Hence, we cannot say the trial judge abused his discretion in assessing the penalties and attorney fees.
Accordingly, the judgment against Old Hickory is affirmed.
Costs of the appeal are to be borne by Sentry and Old Hickory.
AFFIRMED.
NOTES
[1] A binder is used to bind insurance temporarily pending the issuance of the policy and is not valid beyond the issuance of a policy. LSA-R.S. 22:631.