**OPERA BOATS, INC.**

v.

**La REUNION FRANCAIS.**

**Civ. A. No. 86–3471.**

United States District Court,
E.D. Louisiana,
Section L.

Jan. 11, 1989.

Porteous, Hainkel, Johnson & Sarpy, William A. Porteous, III, New Orleans, La., for plaintiff.

Sessions, Fishman, Rosenson, Boisfontaine, Nathan & Winn, Jack M. Alltmont, New Orleans, La., for Powell Ins.

Lester J. Lautenschlaeger, Trial Atty., DeRussy, Bezou & Matthews, John DeRussy, Jacques Bezou, Robert H. Matthews, New Orleans, La., for La Reunion Francais.

Abbott, Webb, Best & Meeks, Lawrence Abbott, New Orleans, La., for Continental Underwriters.

WICKER, District Judge.

This matter was tried before the court at an earlier date. At the conclusion of the plaintiff's case, third party defendant Continental Underwriters, Inc. ["Continental"] moved for involuntary dismissal. The court granted the motion with oral reasons and now issues these supplementary written reasons for its decision.

This is a claim for insurance proceeds under a policy of marine insurance arising out of the mysterious disappearance on or about February 17, 1986, of the crewboats M/V CARMEN and M/V CHARLIE K while the vessels were moored in protected waters on Barataria Bayou near Lafitte,

Louisiana. The claim is brought by Opera Boats, Inc. ["Opera Boats"], the owner of both vessels, and Greycas, Inc. ["Greycas"], the mortgagee of the CHARLIE K, both of which were named assureds and loss payees under the policy in question. The defendant insurer La Reunion Francais ["La Reunion"] filed a third-party action against Continental Underwriters, Ltd. ["Continental"], the surplus lines broker with which Powell Insurance Agency, Inc. had sought coverage on the two vessels on behalf of Opera Boats. In its third-party action, La Reunion claimed recovery over and indemnification from Continental for any liability La Reunion might have to plaintiffs.

The court has jurisdiction under the admiralty and maritime laws of the United States and 28 U.S.C. § 1333.

The policy No. CUL20–11472.035 in force at all pertinent times is a "named perils" hull insurance policy. The following specific marine perils were covered under the policy at issue:

> ... of the Seas, Men-of-War, Fire, Lightning, Earthquake, Enemies, Pirates, Rovers, Assailing Thieves, Jettisons, Letters of Mar and Counter–Mart, Surprisals, Takings at Sea, Arrests, Restraints and Detainments of all Kings, Princes and Peoples, of what nation condition or quality so ever, Barratary of the Master and Mariners and of all other like Perils, Losses and Misfortunes that have or shall come to the Hurt Detriment or Damage of the vessel or any part thereof, ... Continental Exhibit 3.

The burden of proving a loss by a peril insured against is on the insured. *Darien Bank v. Travelers Indem. Co.,* 654 F.2d 1015 (5th Cir.1981); *S. Felicione & Sons Fish Co. v. Citizens Casualty Co. of N.Y.,* 430 F.2d 136, 138 (5th Cir.1970) *cert. denied,* 401 U.S. 939, 91 S.Ct. 936, 28 L.Ed.2d 2d 219 (1971); *Gulf Ventures III, Inc., et al v. Glacier General Assurance Company,* 584 F.Supp. 882 (E.D.La.1984).

■ Plaintiffs contend that a collision caused the M/V CARMEN and the M/V CHARLIE K to break away and sink, or that a theft occurred. Under either set of facts, the plaintiffs argue that there was coverage under the policy because of the phrase "assailing thieves." Additionally plaintiffs contend there was coverage because, by presumption, an unexplained sinking and consequent loss of vessels in calm seas and weather were caused by extraordinary, although unknown and unascertainable, "perils of the seas." The Court finds that the plaintiffs did not carry their burden of proving a loss either by assailing thieves or by perils of the seas and accordingly, there is no coverage under the hull policy in question for this incident.

As a matter of fact, the Court finds that the plaintiff has failed to prove what happened to the vessels; their disappearance is as much a mystery as it was before trial began. The vessels were moored in a heavily trafficked area. The evidence is overwhelming that they did not sink at the dock nor in the intra-coastal canal. Arthur Prestenbach, the owner of the dock in question and a marine surveyor, testified that the vessels would have still been visible had they sunk at the dock. Additionally Prestenbach testified that an unfruitful search was made of the intercoastal waterway for the vessels. Accordingly, this Court cannot find from the evidence or from the presumption that the two vessels did sink.

Opera Boats, Inc. argued that the evidence of green paint at the dock where the vessels were moored and some evidence of green paint on the barges were indicative of a collision and a breakaway. The court does not find such evidence conclusive. Mr. Prestenbach testified that the M/V CHARLIE K and the M/V CARMEN were not the only green vessels using the facility. Two other vessels that used the dock were also painted green, and Prestenbach did not know whether or not it was the same paint. Therefore, it could have been any one of four vessels which scraped the dock.

Likewise the Court cannot conclude from the evidence that the vessels were stolen. There was no evidence that the mooring lines were cut. There was no evidence that any of the plexiglass or any of the other

types of glass on the vessels were broken. There was contradictory evidence about locks on the vessels. However the owner testified that there was no security on these vessels and the engines could have been started without a key.

■ Furthermore, assuming arguendo that evidence had been presented that the vessels were stolen, there was no evidence that the theft occurred as a result of "assailing thieves." *Felicione, supra.* The *Felicione* court explained that marine underwriters added "assailing" to "thieves" to clarify their intent that some force had to accompany the theft for there to be coverage. *Id.* at 139–140. In this case, even were this Court to assume that the two vessels were stolen, there is no evidence of thefts by force.

Notwithstanding the fact that these purported thefts cannot come under the latest Fifth Circuit interpretation of "assailing thieves," the plaintiffs urged this Court to follow the lead of *Aqua Craft v. Boston,* 136 Misc.2d 455, 518 N.Y.S.2d 863, 1987 A.M.C. 1943 (1987). [Under New York law, "assailing thieves" covers claim for surreptitious theft of a vessel from its moorings; alternatively, the loss is covered by "other like perils" language within the marine policy.] Even were this Court to agree, which it does not, it is bound to follow the Fifth Circuit, especially since the Fifth Circuit's interpretation has been quoted with approval by the Louisiana courts. *Cambre v. Traveler Indem. Co.,* 404 So.2d 511 (4th Cir.1981), *cert. denied,* 410 So.2d 761 (La. 1982). ["Assailing thieves" was purposely coined by underwriters to distinguish between theft of personal property by stealth and that taken by force and had nothing to do with the insuring of theft of an entire vessel. *Id.* at 513—514, quoting *Felicione,* 430 F.2d at 139—140.]

■ Finally, the Court finds that the legal presumption that the unexplained loss of vessels was caused by an unknown peril of the sea is inapplicable because these vessels were last seen moored at the dock. The presumption has only been applied in cases where the vessels were under sail and they had left the dock in a seaworthy

condition before they disappeared. *P.T. Tugs, Inc. v. United States Fire Ins., Co.,* 796 F.2d 125 (5th Cir.1986); *Darien Bank, supra.* Accord *Insurance Company of North America v. Lanasa Shrimp Co.,* 726 F.2d 688 (11th Cir.1984). By contrast in this case, there is no evidence whatsoever that these vessels left the dock under their own power and subsequently disappeared.

■ On the breach of a warranty claim which is made solely on the CHARLIE K, the Court finds that there was never any intent to insure a breach of warranty claim.

Courts must give legal effect to the provisions of an insurance policy according to the true intent of the parties, which intent must be determined in light of the policy provisions when the policy terms are clear and unambiguous and lead to no absured consequences (Citations omitted) *Jennings v. Louisiana & Southern Life Insurance Co.,* 280 So 2d 297, 300 (La.App. 1st Cir.1973) quoted in *Cambre,* 404 So 2d at 513.

The policy provisions at issue say nothing about breach of warranty. There was a genuine dispute about whether an endorsement was issued and signed after the loss by Hull and Company, managing general agent for La Reunion, which would have had the effect of adding breach of warranty coverage to the policy. After considering the testimony at trial and the deposition of Cindy Stringer, an employee of Hull & Company and the alleged signer of the endorsement, the court finds that all parties intended that an additional premium was owed before a breach of warranty endorsement would issue. No additional premium was ever paid to cover the cost of the breach of warranty endorsement.

The Court finds unbelievable Ms. Garic's testimony that the breach of warranty endorsement was added. It is incredible that Ms. Garic could have believed that the endorsement had issued while she was still corresponding with Continental over Continental's firm position that there would be no breach of warranty coverage without additional premiums. Furthermore Ms.

Garic admitted that the Powell agency would have been responsible for the added cost if the endorsement had been issued and Opera Boats failed to pay the premium. It is unlikely that Powell agency would agree to assume that responsibility, since there had been a problem collecting a prior year's premium from Opera Boats. In view of that evidence, the Court finds that Ms. Garic certainly should have known there was no coverage.

The Court also discounts the testimony of Marvin Shreve, Continental's claims manager, that he had been assured by Mr. Elder Brown, Jr., a Continental vice-president, in March of 1986, that he was "going to get that coverage." That testimony is of no consequence because no additional premiums were paid, without which there was no coverage, and because Brown had no authority to bind La Reunion to breach of warranty coverage without the payment of additional premiums.

Finally, the plaintiffs have not shown that they relied to their detriment on the issuance of breach of warranty coverage on the M/V CHARLIE K. The plaintiffs knew or should have known through the Powell agency that there was no breach of warranty coverage. But even if the plaintiffs erroneously believed that the CHARLIE K was covered for breach of warranty, there was no testimony or any evidence presented at trial that, had they been made aware that the endorsement had not been issued, that they could have obtained breach of warranty coverage from another insurance company for a loss that had already occurred.

Accordingly, for the foregoing reasons and those orally assigned in open court, the Court granted Continental's motion for involuntary dismissal.