618 So.2d 1081 (1993)
OPERA BOATS, INC. and Greycas, Inc.
v.
CONTINENTAL UNDERWRITERS, LIMITED, and Powell Insurance, Inc.
No. 92 CA 0042.
Court of Appeal of Louisiana, First Circuit.
April 23, 1993.
Rehearing Denied June 16, 1993.
*1082 William A. Porteous, III, New Orleans, for plaintiff-appellant.
Jack Alltmont, New Orleans, for Powell.
*1083 Lawrence E. Abbott, New Orleans, for Continental.
Before CARTER, LeBLANC and PITCHER, JJ.
LeBLANC, Judge.
Appellants, Greycas, Inc. and Opera Boats, Inc., appeal two summary judgments dismissing their claims against Powell Insurance Agency, Inc. and Continental Underwriters, Ltd., respectively, for failure to procure insurance coverage requested by plaintiffs on two vessels.
On approximately February 17, 1986, two vessels owned by Opera Boats, the M/V Carmen and the M/V Charlie K, disappeared from their dock under unexplained circumstances. At that time, Greycas was mortgagee of the M/V Charlie K. Although a policy of marine hull insurance covering the two vessels was in effect, issued by La Reunion Francais, with Opera Boats and Greycas as the named assureds, the circumstances surrounding the loss of the vessels did not fall within any of the risks listed in the named perils clause of the policy.[1] Furthermore, the policy did not provide breach of warranty coverage, which plaintiffs allege would have provided protection for the loss of the vessels under the circumstances.[2] The lack of breach of warranty coverage lies at the center of the present suit.
On June 15, 1989, plaintiffs filed the present suit against defendants on the basis that defendants breached their duty to plaintiffs in failing to procure a breach of warranty endorsement to the marine hull policy issued by La Reunion Francais. Subsequently, Powell filed a motion for summary judgment, arguing it had breached no duty to plaintiffs. After hearing, the trial court issued written reasons for judgment on August 1, 1991, finding that, although Powell was unsuccessful in obtaining breach of warranty coverage, it used reasonable diligence in attempting to do so and promptly notified plaintiffs of its failure to obtain this coverage. The court further found that Powell's actions did not warrant an assumption by plaintiffs that they had such coverage. Accordingly, the court rendered summary judgment on August 16, 1991, dismissing plaintiffs' claims against Powell.
Thereafter, Continental filed a similar motion for summary judgment which, after another hearing, was granted by the trial court on October 2, 1991. Plaintiffs have now appealed these two judgments.

FACTS[3]
In March of 1985, Opera Boats requested that its insurance agent, Powell, obtain a renewal policy of marine hull insurance on the M/V Carmen and the M/V Charlie K. *1084 Powell had been Opera Boats' insurance agent for several years and had previously obtained several marine hull policies for Opera Boats which included breach of warranty endorsements. In obtaining this policy, which became effective March 29, 1985, Powell dealt with Continental, which, through an intermediate broker, procured the above-mentioned policy of insurance with La Reunion Francais. In addition to Opera Boats, the policy named Greycas as loss-payee with respect to the M/V Charlie K.
Although the request for a rate quotation from Powell to Continental did not list breach of warranty coverage, Powell maintains that it was told by one of Continental's employees during a telephone discussion that this coverage was included in the policy at the rate quoted, i.e., at no additional charge. Powell thereafter issued a certificate of insurance on April 10, 1985, upon Greycas' request, which indicated that the marine hull policy included breach of warranty coverage in the amount of $180,000 on each vessel. However, a certificate of insurance issued by Continental did not indicate that breach of warranty coverage was included. The policy itself makes no reference to breach of warranty coverage.
In May, Greycas wrote a letter to Powell regarding the certificate issued by it, stating that the certificate "does not indicate the policy conditions required by the contract". Samples of the conditions required by Greycas, including a breach of warranty endorsement, were attached, and Greycas requested that Powell obtain the addition of these conditions to the policy. Accordingly, Powell subsequently wrote a letter to Continental, dated June 14, 1985, requesting several changes to the policy, specifically including the addition of a breach of warranty endorsement. Copies of this letter were sent to Opera Boat and Greycas. By letter dated June 27, 1985, Continental responded that breach of warranty coverage could be issued, but that it needed to know the amount of coverage required on each vessel, and that the premium would be based on that amount.
On September 16, 1985, Greycas wrote to Powell inquiring when it could expect to receive the endorsements, which included the breach of warranty endorsement, requested by Powell in its June 14, 1985 letter to Continental. Powell replied by letter on September 24, 1985, that Opera Boats owed it over $8,000.00 in premiums[4], and it was not in a position to do anything which would increase the insured's premium until that amount was paid.
In support of its motion for summary judgment, Powell also filed portions of the deposition of Ms. Debbie Inman, an employee of Greycas who worked on the Opera Boats account. Ms. Inman acknowledged in this deposition that she was aware that Continental had refused to add breach of warranty coverage unless an additional premium was paid for it in advance. Although she could not recall the exact time she became aware of Continental's position, she indicated it was sometime between August, 1985 and the latter part of September of that year. According to Ms. Inman, Greycas' response to the situation was that it would not pay premiums for its customers. She further indicated that, to the best of her recollection, an employee in another department of Greycas (she could not recall the individual), was asked to notify Opera Boats that it would have to pay the additional premium.
On December 27, 1985, Powell sent a letter to Continental, with copies to Opera Boats and Greycas, again requesting that a breach of warrant endorsement be added to the policy. Continental responded by letter, dated January 2, 1986, that it had not provided the endorsement because it did not know who would be responsible for the premium. The letter also noted that there was apparently a prior misunderstanding between Continental and Powell regarding whether breach of warranty coverage would be provided at no additional charge.
*1085 On January 14, 1986, Powell wrote a letter to Continental advising it that Greycas had been notified that there would be no changes in the policy at that time "due to the balance".
Approximately one month later, on February 17, 1986, the M/V Charlie K and the M/V Carmen disappeared from their docks.

ASSIGNMENTS OF ERRORS
Plaintiffs allege the trial court erred in the following respects.
1. The trial court erred in granting summary judgment in favor of Powell Insurance Agency despite a genuine dispute as to whether:
A. Powell used due diligence to obtain breach of warranty coverage for the two vessels and properly kept its clients advised, and
B. Opera Boats and Greycas relied on Powell to obtain the breach of warranty coverage.
2. The trial court erred in granting summary judgment in favor of Continental Underwriters despite a genuine dispute as to whether there was fault and neglect on the part of Continental Underwriters for failing to resolve a dispute between it and Powell over breach of warranty coverage which persisted for eleven months.

LAW
A motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories, admissions, affidavits, and other supporting documents, if any, which have been filed into the record or admitted into evidence show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La.C.C.P. art. 966; Louisiana Nat. Bank v. Slaughter, 563 So.2d 445, 447 (La.App. 1st Cir. 1990). The mover bears the burden of establishing the absence of genuine issues of material fact and that he is entitled to judgment as a matter of law. Id. In considering a motion for summary judgment, it must first be determined whether the supporting documents are sufficient to resolve all material issues of facts. If so, the opposing party may no longer rest on the mere allegations contained in his pleadings. At that point, the burden shifts to the opposing party to present evidence that a material fact is still at issue which precludes summary judgment. La.C.C.P. art. 967; Louisiana Nat. Bank, 563 So.2d at 447-448.
Summary judgments are not favored and any reasonable doubt should be resolved against the mover. Any doubt as to whether an issue of material fact exists is resolved against granting the summary judgment and in favor of trial on the merits. Louisiana Nat. Bank, 563 So.2d at 448.
In the present case, the basis of plaintiffs' claim is defendants' failure to obtain breach of warranty coverage on the M/V Carmen and the M/V Charlie K.[5] An insurance agent or broker who undertakes to obtain insurance for a client owes the client a duty to use reasonable diligence in attempting to place the insurance requested and to notify the client promptly if he is unable to obtain the desired insurance. Karam v. St. Paul Fire & Marine Insurance Company, 281 So.2d 728, 730 (La. 1973). If the insurance agent breaches these duties, a client may recover from the agent the losses he sustains as a result thereof if the actions of the agent warranted an assumption by the client that he was properly insured as requested. Id. In order to recover for losses arising out of the agent's failure to procure insurance coverage, the plaintiff must establish: 1) an undertaking or agreement by the insurance *1086 agent to procure insurance; 2) failure of the agent to use reasonable diligence to obtain insurance and to notify the client promptly of the absence of coverage; and 3) actions by the agent which warranted the client's assumption that he was insured in the amount of the desired coverage. Karam, 281 So.2d at 730-731; Arnone v. Anzalone, 481 So.2d 1047, 1049 (La.App. 1st Cir.1985); Norred v. Commercial Union Ins. Co., 526 So.2d 829, 835 (La.App. 2nd Cir.), writ denied, 531 So.2d 483 (1988). Additionally, an insurance broker has a fiduciary responsibility to the insured and is liable for its own fault and neglect. La. C.C. arts. 3003, 3017 and 3018; Britten v. Payne, 381 So.2d 855, 858 (La.App. 1st Cir.), writs denied, 384 So.2d 800 (1980); Neustadter v. Bridges, 406 So.2d 738, 741 (La.App. 4th Cir.1981).

POWELL INSURANCE AGENCY
It is not disputed that Powell undertook to procure breach of warranty coverage on behalf of plaintiffs. In contrast, the issue of whether Powell was reasonably diligent in doing so is sharply disputed. The trial court concluded the exhibits filed by Powell in support of its motion for summary judgment established that it was diligent in attempting to procure breach of warranty coverage for plaintiffs. However, we find it unnecessary to reach this issue because, in any event, plaintiffs were timely advised of Powell's failure to obtain this coverage. Thus, even if Powell was not reasonably diligent in its attempts to obtain breach of warranty coverage, plaintiffs were not warranted in assuming they were protected by breach of warranty coverage.
Despite the certificate of insurance issued by Powell in April, 1985, erroneously indicating the policy contained breach of warranty coverage, as early as June of 1985, plaintiffs were put on notice by the letter Powell sent to Continental requesting the addition of a breach of warranty endorsement, that there was a problem with this coverage. No later than July of that year, plaintiffs received copies of the policy, an examination of which would have shown that breach of warranty coverage was not included. In response to Greycas' inquiry in September regarding the desired endorsement, Powell responded by letter that it was not in a position to do anything which would increase the premium on the policy because Opera Boats already owed Powell too much money. Further, the deposition testimony of Ms. Inman, a Greycas employee, makes it clear that Greycas was advised by Powell no later than October, 1985, of Continental's refusal to add breach of warranty coverage without the payment of an additional premium. In accordance with its policy not to pay premiums on behalf of its customers, Greycas chose not to pay the additional premium required by Continental. Nor did Opera Boats pay the premium.
In brief plaintiffs admit that there were communications by defendants to "Opera Boats & Greycas about problems with the [breach of warranty] endorsement and nonpayment of premiums" but claim that there were "also assurances that the coverage had indeed been obtained." Additionally, Mr. Lionel Bernardi, one of Opera Boats' operators, stated that over the years breach of warranty coverage has been a "constant" problem but that Powell would indicate they had it and always ended up getting it.
Despite these general claims, plaintiffs do not describe any specific incidents when Powell gave such assurances or give any details thereof, relying only on their general claim that such assurances were given. Once supporting evidence has been properly filed to establish a fact, the opposing party can no longer rest on mere allegations, but must present evidence to show that an issue of material fact still exists. As discussed above, defendants have presented evidence that plaintiffs were advised of the failure to obtain breach of warranty coverage and the fact that an additional premium was necessary to obtain it. In light of this evidence, plaintiffs' bare assertion that defendants gave assurances that breach of warranty coverage had been obtained, without giving any specific details or offering any supporting evidence *1087 thereof, are inadequate to rebut defendants' evidence.
Additionally, we find no merit in plaintiffs' argument that the fact that Powell continued to advocate the position that breach of warranty coverage should have been included in the original policy without an additional premium demonstrates that plaintiffs were entitled to assume there was such coverage. As stated, the evidence filed in support of defendants' motions for summary judgment clearly establishes that plaintiffs were advised that Continental refused to add breach of warranty coverage without an additional premium. This fact is not altered by Powell's continued efforts to obtain such coverage for plaintiffs without additional charges since, as noted above, there is no evidence indicating that plaintiffs were given assurances that these efforts would be successful.

CONTINENTAL UNDERWRITERS
Plaintiffs contend summary judgment in favor of Continental was improper because a genuine issue of fact existed regarding whether Continental was guilty of fault or neglect in failing to resolve the dispute between it and Powell over breach of warranty coverage.
The original quotation request submitted by Powell to Continental did not include a request for breach of warranty coverage. However, Powell contends that after a quote was received from Continental, one of its employees verbally advised an employee of Powell that such coverage was included in the premium quoted. In a letter written to Powell in January, 1986, Continental acknowledged that there apparently had been a misunderstanding between the two offices regarding whether breach of warranty coverage would be provided at no additional charge. Regardless of whether a Continental employee was originally at fault in advising Powell that this coverage was included, Continental was thereafter consistent, at least through the time of the loss of the vessels, in its position that breach of warranty coverage was not included in the policy and would not be added without the payment of an additional premium. The certificate of insurance issued by Continental in March, 1985, did not reflect that breach of warranty coverage was included in the policy. Further, by letter dated June 27, 1985, and another dated January 2, 1986, Continental indicated that this coverage could be added upon the payment of an additional premium.
While plaintiffs contend that Continental was at fault in not earlier resolving the dispute between it and Powell over the breach of warranty coverage, we know of no duty which required Continental to resolve this situation by providing plaintiffs with this coverage without the payment of an additional premium. Continental has provided evidence showing that up until the time the vessels were lost, it consistently denied that there was breach of warranty coverage and clearly indicated that it would be added only upon the payment of an additional premium.[6] As previously discussed, plaintiffs were aware of this position no later than October, 1985, months before the vessels were lost. Plaintiffs had the opportunity to obtain breach of warranty coverage by paying the additional premium, but choose not to do so. Under these circumstances, the actions of Continental were not such that plaintiffs could reasonably assume they had the desired coverage.

CONCLUSION
For the above reasons, the summary judgments rendered by the trial court in *1088 favor of defendants are affirmed. Plaintiff-appellants are to pay all costs of this appeal.
AFFIRMED.
NOTES
[1] This conclusion was the finding in a suit on the policy filed by plaintiffs in federal court against La Reunion Francais. In that suit, plaintiffs claimed the two vessels either were stolen or that a collision caused them to break away from the dock and sink, and that under either scenario the policy provided coverage. See Opera Boats v. La Reunion Francais, 702 F.Supp. 1278 (E.D.La.1989), affirmed, 893 F.2d 103 (5th Cir.1990). After trial, the court dismissed plaintiffs' claims against La. Reunion Francais on the basis that plaintiffs had failed to establish that the disappearance of the vessels was due to any of the named perils covered by the policy. Id.
[2] The judgment rendered in the federal suit referred to above, included a finding that the policy issued by La Reunion Francais did not include breach of warranty coverage. The coverage which the parties refer to as "breach of warranty" coverage provides protection to a mortgagee from losses caused by acts and omissions of the mortgagor. In the course of its dealings with Powell, Greycas provided the following example of the type of provision it wanted included in the policy:

Insurance shall not be invalidated by any action or inaction by the Assured or others as respects the interest of the Certificate Holder [mortgagee] regardless of any breach/violation of the Assured of any warranties, declarations or conditions contained in said policies.
This provision appears substantially similar to the type of provision generally referred to as a "standard" or "union" mortgage clause. See Ingersoll-Rand Financial Corp. v. Employers Ins., 771 F.2d 910, 913 (5th Cir.1985), cert. denied, 475 U.S. 1046, 106 S.Ct. 1263, 89 L.Ed.2d 573 (1986); W. McKenzie & A. Johnson, Insurance Law & Practice § 332 (1986).
[3] These facts are established by exhibits attached to the defendants' motions for summary judgment and plaintiffs' opposition thereto, or otherwise properly filed into the record.
[4] The amount owed was apparently for a prior policy; it appears that Opera Boats financed the entire premium for the policy at issue herein and did not owe Powell any amount for that policy.
[5] In their petition, plaintiffs assert in the alternative that defendants also were liable for failing to disclose to plaintiffs that the marine insurance policy obtained was a "named peril" rather than an "all risk" policy, which would have provided coverage for the unexplained loss of the two vessels. The trial court rejected this argument, concluding that a marine hull policy was customarily a named peril rather than an all risk policy, and the exhibits reflected that plaintiffs, who were experienced in the marine industry, were aware of the actual type of coverage obtained. On appeal, plaintiffs have not assigned error to this finding.
[6] In brief plaintiffs also complain they relied to their detriment on Continental's actions after the loss of the vessels. According to plaintiffs, Continental procured a breach of warranty endorsement to the policy after the loss of the vessels, which it used to obtain a voluntary dismissal for itself and Powell from plaintiffs' federal suit. The federal trial court concluded that no valid endorsement was issued after the losses occurred because there was never any intent by the insurer to cover breach of warranty claims. Opera Boats, 702 F.Supp. at 1280. The court further found that there was no detrimental reliance by plaintiffs on the purported breach of warranty endorsement, since there was no evidence that plaintiffs could have otherwise obtained breach of warranty coverage from another insurer for a loss which has already occurred. 702 F.Supp. at 1281. We agree with this conclusion.