JiCOOKS, Judge.
In this suit for personal injury, plaintiff (Keith Laughlin) and intervenor (Empire Land Corporation) appeal a summary judgment rendered in favor of defendant (Kulko-ni, Inc.). They contend the trial court inappropriately granted summary judgment because genuine issues of material fact still exist in this case. The pleadings, affidavits, and exhibits tendered by Kulkoni, they assert, do not resolve these factual issues. We agree.
PROCEDURAL HISTORY
On October 14, 1987, Keith Laughlin was injured while working on a drilling rig owned by Universal Drilling Company (Universal). *208 Laughlm was struck by a power swivel when the ⅜ inch wire rope used to lift it broke.
Laughlin filed suit against Kulkoni, Inc. (Kulkoni), the supplier of the wire rope, and alleged the rope was defective. Empire intervened seeking to recover worker’s compensation benefits it paid Laughlin. Kulkoni answered the suit and third partied Man Ho Manufacturing Company, Ltd., the manufacturer of the wire rope, and the manufacturer’s insurer. Subsequently, Kulkoni filed a motion for summary judgment asserting it did not supply the rope which broke and caused the swivel to hit Laughlm. Further, Kulkoni maintained it is not a manufacturer but a distributor of wire rope; and, as a distributor, it is not legally hable for the claimed injury. Kulkoni’s motion was granted by the trial judge without written reasons. Laughlm and Empire appeal.
JajLEGAL PRINCIPLES
Appellate courts review summary judgments de novo employing the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342 (La.1991). LSA-C.C.P. art. 966 provides a motion for summary judgment shall be rendered forthwith if the pleadings, depositions, answers, interrogatories, and admissions on file, together with the affidavits (if any) show there is no genuine issue as to a material fact; and, the mover is entitled to judgment as a matter of law. However, all inferences drawn from the evidence must be construed in the light most favorable to the party opposing the motion; and all doubt must be resolved in his favor. Schroeder, supra; Self v. Walker Oldsmobile Co., Inc., 614 So .2d 1371 (La.App. 3d Cir.1993).
The documents supporting movant’s position that no genuine issue of material fact exists are closely scrutinized; while the opposing documents are treated indulgently. Self, supra. The mover bears the burden of establishing the absence of genuine issues of material fact and that he is entitled to judgment as a matter of law. Opera Boats v. Continental Underwriters, 618 So.2d 1081 (La.App. 1st Cir.1993). The supporting documents must be sufficient to resolve all material issues of facts. Opera Boats, supra. When reasonable inferences may be drawn from subsidiary facts attested in affidavits or reflected in exhibits, such inferences also must be viewed in the light most favorable to the party opposing the motion. Ouachita Nat'l Bank v. Gulf States Land & Development, Inc., 579 So.2d 1115 (La.App. 2d Cir.1991), writ denied, 587 So.2d 695 (La.1991).
If the supporting documents presented by the moving party are insufficient to resolve all material facts at issue, summary judgment must be denied. A summary judgment is not a substitute for trial on the merits. Sanders v. City of Blanchard, 438 So.2d 714 (La.App. 2d Cir.1983). A fact is material, and thus precludes summary judgment, if its existence or nonexistence may be essential to plaintiff’s cause of action under the applicable theory of recovery, i.e., the fact potentially insures or prevents recovery, affects the litigant’s ultimate success, or determines the outcome of a legal dispute. South Louisiana Bank v. Williams, 591 So.2d 375 (La.App. 3d Cir.1991), writ denied, 596 So.2d 211 (La.1992).
There are two issues of fact which are material in resolving whether Kulkoni is legally liable for Laughlin’s injury. The first question is: Did Kulkoni supply the wire rope which |3broke and caused the swivel to strike Laughlin? If Kulkoni did not supply the rope, it is not legally responsible for the injury Laughlin sustained under any theory of recovery asserted by him. The derivative claim of Empire also must fail. It matters not whether Kulkoni acted as a distributor or manufacturer.
The rig in question was owned first by Tabeo Exploration (Tabeo). On September 3, 1987, Tabeo purchased 300 feet of ⅜ inch imported wire rope from Lake Charles Sling (LCS). LCS’s invoice reflects the amount of wire rope Tabeo purchased; but it did not memorialize the reel identification number from which the rope was removed. The reel, LCS’s manager stated, was stored in LCS’s warehouse. LCS obtained a supply of imported wire rope from Kulkoni in February 1987.
*209 On September 28, 1987, Tabeo sold the subject rig to Universal, which owned it at the time of Laughlin’s accident on October 14,1987. Thomas Blankenship, Tabeo’s owner and president, by deposition testimony stated he purchased the wire rope which broke from LCS and it was installed on the rig before it was sold to Universal. LCS’s general manager and its president testified the only imported wire rope stored in LCS’s warehouse in 1987 was that acquired from Kulkoni. The imported wire rope sold to Tabeo, according to LCS, was removed from a reel in its warehouse. This “chain of possession” and series of transactions, Laughlin and Empire assert, establish the rope which broke was acquired from Kulkoni.
To support the factual contention that the wire rope was not supplied by it, Kulkoni first presented the test certificate purporting to identify the manufacturer of the wire rope it sold to LCS. Although LCS’s invoice did not reflect the reel identification number, LCS’s general manager stated in deposition he recalled which reel the wire rope was removed from; and, he later supplied the identification number recorded on the reel to Kulkoni. Using this number, Kulkoni obtained from its file the test certificate mentioned. The certificate was supplied by Man Ho, a manufacturer of wire rope. Armed with this document, Kulkoni insists the identification number on the reel and the test certificate “prove” it did not supply the rope which broke. This is so, according to Kulko-ni, because Man Ho uses green thread to identify wire rope it manufactures. Karl Becker, Kulkoni’s president, attested by affidavit that he examined the wire rope which broke; and no green thread was discovered in the rope. Voila, Kulkoni exclaims, the absence of green thread in the subject wire rope indisputably establishes it did not supply the wire rope. Kulkoni’s conclusion “begs the factual Uquestion” at issue. Ruggero J. Aldisert, Logic for Lawyers: A guide for Clear Legal Thinking 160 (1989). It presupposes the accuracy of LCS’s manager’s identification of the reel from which the wire rope allegedly was removed. Though Kulkoni’s conclusion is logical, it also is flawed. The fact it presupposes as true is neither undisputed or proven.
Laughlin and Empire assert the imported wire rope which broke and caused the swivel to hit Laughlin was supplied by Kulkoni. To support this factual assertion, they too referenced the deposition of LCS’s general manager who stated the only imported wire rope stored in LCS’s warehouse during the relevant period was acquired from Kulkoni. Kulkoni admits it sold imported wire rope to LCS in 1987. LCS acknowledges it supplied imported wire from its warehouse to Tabeo on September 3, 1987. Tabeo stated this wire rope was installed on the rig sold to Universal on September 28, 1987. It is reasonable to infer that the rope which broke and injured Laughlin was the same rope supplied by Kulkoni. All reasonable inferences must be drawn in the light most favorable to the party opposing the motion. Oua-chita Nat’l Bank, supra. To defeat a motion for summary judgment, the opposing party is not required to establish, with certainty, the existence of a fact contrary to that alleged by the moving party. The burden of establishing the nonexistence of a material factual issue rests on the moving party. Kulkoni did not carry its factual burden. The proof Kul-koni presented to establish it did not supply the rope in question does not end the factfin-der’s inquiry. Whether it did or not remains in dispute. The factfinder still must assess the trustworthiness of LCS’s manager’s recollection that the imported wire sold to Tabeo was removed from the reel he later identified.[1] Such credibility determination we have said must await trial on the merits. Hopkins v. Sovereign Fire & Casualty Ins. Co., 626 So.2d 880 (La.App. 3d Cir.1993).
Even if it supplied the wire rope, Kulkoni asserts, it is still entitled to summary judgment as a matter of law because it was only the distributor of the rope and not the manufacturer. Countering, Laughlin and *210 Empire argue Kulkoni is legally presumed a manufacturer because a reasonable consumer could not discern that it occupied only the position of distributor. They cite Media Production Consultants, Inc. v. Mercedes-Benz of North America, Inc., 262 La. 80, 262 So.2d 377 (1972) as authority for this legal theory of recovery. In Media, the Louisiana Supreme Court held a distributor may be liable to the same extent as a manufacturer if it ostensibly occupies the position of a manufacturer. In that case, the Court reasoned the close relationship between the distributor and a German manufacturer sufficiently placed the distributor in the manufacturer’s position. The Court noted the following action by the distributor significantly evidenced its assumption of the manufacturer’s role: (1) it accepted total responsibility for marketing, selling, and servicing the vehicle; (2) it established all franchise dealerships in the United States; and (3) its name was placed virtually on all the manuals, policies, and literature that ordinarily reflects the name of the manufacturer.
Laughlin and Empire assert Kulkoni occupies the position of a manufacturer because: (1) it does not disclose the identity of its manufacturers and suppliers, only Kulkoni’s name appears in its catalog; (2) it requires that Man Ho comply with United States manufacturing regulations; (3) it requires a test certificate from the manufacturer but it re-issues all certificates so its name appears in place of the actual manufacturer’s name; and (4) it occasionally conducts independent tests on the wire rope although it has no duty to do so.
Kulkoni responds it did not hold out the wire rope sold as its own by labeling or identifying the product with Kulkoni’s trade-name or logo. Kulkoni claims the only identifying mark on the wire rope or the reels were that of the manufacturer. Kulkoni further asserts it does not establish product specifications; it only requests that products supplied by the manufacturers meet the requirements set forth by the United States government.
Whether Kulkoni appeared to be a manufacturer from the consumer’s perspective is a factual question. This factual issue, as noted, is genuinely disputed by the parties. On this record, we cannot say Kulkoni is entitled to summary judgment as a matter of law.
DECREE
For the foregoing reasons, the trial court’s judgment is reversed and the matter is remanded for further proceedings. Costs are assessed to Kulkoni.
REVERSED.

. His recollection, assessed on the limited record before us, appears inconsistent with his representation that the imported rope sold to LCS was stored in LCS’s warehouse and obtained from Kulkoni because the test certificate and absence of green thread in the rope in question points to a contraiy factual scenario.