997 So.2d 83 (2008)
Jason BIGELOW and Jennifer Lohmann-Bigelow
v.
CRESCENT TITLE, L.L.C., Robert Bergeron, Danny Douglass, Charles A. Lagarde, Jr., State Farm Fire and Casualty Company, Robert and Carla Rainey, and Iberia Bank.
No. 2008-CA-0932.
Court of Appeal of Louisiana, Fourth Circuit.
October 15, 2008.
Order Denying Rehearing December 10, 2008.
*84 James J. Morse, James J. Morse, APLC, New Orleans, LA, for Plaintiffs/Appellees Jason Bigelow and Jennifer Lohmann-Bigelow.
Gerald J. Nielsen, Joseph J. Aguda, Jr., Keith M. Detweiler, Nielsen Law Firm, LLC, Metairie, LA, for Defendants/Appellants State Farm Fire and Casualty Company and Charles A. Lagarde, Jr.
(Court composed of Judge CHARLES R. JONES, Judge PATRICIA RIVET MURRAY, Judge JAMES F. McKAY, III, Judge DENNIS R. BAGNERIS, SR., Judge TERRI F. LOVE).
PATRICIA RIVET MURRAY, Judge.
This is a negligence action against an insurance agent and his employer, an insurance *85 company, for failing to transfer a flood insurance policy. Following a jury trial, a judgment was rendered in favor of the plaintiffs, Jason and Jennifer Bigelow, and against the agent, Charles Lagarde, Jr., and his employer, State Farm Fire and Casualty Company ("State Farm"). The trial court denied the motion for judgment notwithstanding the verdict ("JNOV") or, in the alternative, motion for new trial filed by Mr. Lagarde and State Farm. From that judgment, Mr. Lagarde and State Farm appeal. For the reasons that follow, we reverse.

FACTUAL AND PROCEDURAL BACKGROUND
In October 2004, Robert and Carla Rainey purchased a standard flood insurance policy on their residence located on Memphis Street in New Orleans. The Raineys purchased the flood policy through the office of Mr. Lagarde, a State Farm agent. The Raineys had a longstanding relationship with Mr. Lagarde's office and often dealt with Mr. Lagarde's office manager, Delouise Morgan. The Raineys paid a premium of $390.00 for the flood policy, which was issued through the National Flood Insurance Program ("NFIP"). The policy had a one year term ending October 21, 2005, and the number of this policy is 98-RB-6291-4.
In December 2004, the Raineys sold their Memphis Street residence to the Bigelows. Because the property was located in a flood zone, the Bigelows' mortgagor, Iberia Bank, required that they obtain flood insurance as a condition of the closing on the property. In an attempt to obtain flood insurance at a low premium, the Bigelows contacted the Raineys regarding assuming their existing flood insurance policy on the residence. Mrs. Rainey contacted Mr. Lagarde's office manager, Ms. Morgan, regarding the feasibility of assigning their flood policy to the Bigelows. Ms. Morgan, who is a licensed insurance agent, advised Mrs. Rainey that it was possible to assign the policy, that it had to be done in writing, and that it could be done by collecting the remaining unearned premium from the Bigelows at the closing. Thereafter, the Raineys agreed to allow the Bigelows to assume the flood policy and to have the Raineys pay them at the closing the prorated value of the policy ($329.10).
On the day before the closing, Toni Landry with Crescent Title, L.L.C. ("Crescent Title"), the Bigelows' closing attorney, faxed the Bigelows' personal information to Ms. Morgan. Using this information,[1] Ms. Morgan filled in the following information on the State Farm Change Request Form: the Raineys' flood insurance policy number (98-RB-6291-4), the effective date of the policy transfer, the Bigelows' names, the property address, Mr. Bigelow's social security number, the Bigelows' mortgage company's name and address, the total premium payable, the flood insurance coverages for the building ($250,000) and contents ($20,000), and the date and time of the application. Mr. Lagrande's office also stamped the form with a stamp reading: "C. LAGARDE, JR. 18-1382 CRESCENT CITY METRO 22-5692."
On that same date, December 16, 2004, Ms. Morgan faxed the filled out Change Request Form to Ms. Landry at Crescent *86 Title with a cover sheet that set forth the following instructions:
"Have Mr. Rainey sign @ top as `signature of current insured' and Mr. Bigelow sign further down as `Applicant's signature.' The coverage @ $250,000 is max we can write for flood. Let me know if you need any further info or assistance."
Ms. Morgan placed a copy of the unsigned Change Request Form in the personal pending file that she keeps in her drawer.
At the December 17, 2004 closing, the Bigelows paid the Raineys the pro rata value of the flood insurance policy, $329.10. Crescent Title listed this payment on the HUD settlement statement it prepared; this payment was listed as payment was for "Flood Insurance Proration 12/17/04 to 10/21/05." Crescent Title, however, failed to have the parties sign the Change Request Form at the closing. The Change Request Form therefore was neither signed by the parties, nor returned to Mr. Lagarde's office. As a result, the flood policy was not transferred.
On January 11, 2005, Mrs. Rainey called Ms. Morgan regarding canceling her homeowner's insurance policy on the Memphis Street property, which had been sold to the Raineys. Because Mrs. Rainey believed the flood policy had been transferred to the Bigelows at the closing, she did not mention it. Ms. Morgan entered her computer and cancelled all the outstanding policies on the Memphis Street property, including the flood policy that was still insured in the Raineys' name. On January 11, 2005, State Farm issued a premium refund check in the amount of $327.99 to the Raineys. On the check, it was noted that this payment was for the return of the unused premium. Along with the refund check the Raineys also received an Acknowledgment of Cancellation Request stating that the Flood-Dwelling Policy (Policy Number 98-RB-6291-4) was cancelled effective December 17, 2004 (the date of the closing) at the request of the policyholder. The Raineys endorsed and deposited the check.[2]
On August 29, 2005, Hurricane Katrina struck the New Orleans area. As a result, the Bigelows' home on Memphis Street sustained severe flood damage.[3] Thereafter, the Bigelows attempted to file a claim with State Farm. At that time, they first learned that the flood policy on their property had not been transferred and had been cancelled. This suit followed against the following defendants: (i) Crescent Title and two of its attorneys, Robert Bergeron and Danny Douglass; (ii) Mr. Lagarde and his employer, State Farm; (iii) the Raineys; and (iv) Iberia Bank.[4] After settling their claims against the Crescent Title defendants and Iberia Bank and dismissing their claims against the Raineys, the Bigelows proceeded to trial against Mr. Lagarde and State Farm.
*87 On January 28 and 29, 2008, a jury trial was held in this matter.[5] The jury found that both Mr. Lagarde and Crescent Title were negligent and allocated fault equally between them. The jury found no comparative fault on the part of the Bigelows or any other party. The jury determined that the Bigelows' damages were as follows: $159,400 property damages, $20,000 content damages, $10,000 mental pain and suffering ($5,000 each), and $13,200 rental expenses. After reducing the damage award by 50%, the trial court entered judgment against Mr. Lagarde and State Farm for $101,300 plus prejudgment interest from the date of judicial demand. On April 25, 2008, the trial court denied the motions for JNOV, or, in the alternative, new trial filed by Mr. Lagarde and State Farm. This appeal followed.

DISCUSSION
On appeal, the Defendants, Mr. Lagarde and State Farm, assert the following three assignments of errors:
1. The trial court erred in denying the Defendants' motions for directed verdict and JNOV, and in entering judgment against the Defendants, because the evidence at trial was insufficient as a matter of law to establish the Defendants' liability.
2. The trial court erred in denying the Defendants' motion for JNOV with respect to mental anguish damages, and in entering judgment awarding mental anguish damages, because there was no evidence that Mr. Lagarde's agency engaged in extreme and outrageous conduct and there was no competent evidence of a genuine mental injury.
3. The trial court erred in failing to instruct the jury that the Plaintiffs are charged with knowledge of the prerequisites for transferring a flood policy issued pursuant to the NSIP.
The standard of review for a JNOV is a two part inquiry. First, using the same criteria the trial court uses in deciding whether to grant JNOV, the appellate court must determine if the trial court erred. Davis v. Wal-Mart Stores, Inc., 00-0445 p. 5 (La.11/28/00), 774 So.2d 84, 89. "[T]he standard for granting or denying a JNOV is the same as that for a directed verdictwhether reasonable minds could differ." Frank L. Maraist and Harry T. Lemmon, 1 Louisiana Civil Law Treatise, Civil Procedure § 13.4 (1999); see La. C.C.P. art. 1811. "After determining that the trial court correctly applied its standard of review as to the jury verdict, the appellate court reviews the JNOV using the manifest error standard of review." Davis, supra.
In this case, Mr. Lagarde and State Farm filed a motion for directed verdict at the close of the Bigelows' case based on their contention that no evidence was presented that they owed a duty to the Bigelows. Denying the motion for directed verdict, the trial court reasoned that there was sufficient evidence for the jury to find Mr. Lagarde's office had accepted and attempted to act on a duty to procure the transfer of the flood policy in question. As noted, Mr. Lagarde and State Farm assert on appeal the trial court erred in denying their motions for directed verdict and JNOV. They contend that because of the Bigelows' failure to return the Change Request Form they never became Mr. Lagarde's *88 clients and neither Mr. Lagarde nor State Farm owed a duty to them. They further contend that the trial court's finding of liability was erroneous given that the evidence at trial demonstrated that:
 The Bigelows never asked Mr. Lagarde's office to transfer the flood policy, and any undertaking to do so was expressly contingent upon future events that were beyond Mr. Lagarde's office's knowledge and control;
 The steps the Bigelows claim that Mr. Lagarde's office should have taken are well beyond the scope of any duty undertaken by Mr. Lagarde's office; and
 Mr. Lagarde's office never did or said anything to support any reasonable belief by the Bigelows that the flood policy had in fact been transferred.
The Bigelows, on the other hand, cite the following facts as supporting a finding of a fiduciary agent-client relationship between them and Mr. Lagarde's office:
 The Bigelows discussed assuming the Raineys' flood insurance policy with the Raineys, and the Bigelows agreed to pay the Raineys the pro rata value of the policy at closing. The Raineys, in turn, spoke to Mr. Lagarde's office and informed them that they wanted the Bigelows to assume their flood policy.
 Mr. Bigelow spoke with someone at Mr. Lagarde's office and provided their office with the Bigelows' personal information.
 The Bigelows' closing attorneys, Crescent Title, communicated by telephone and by fax with Mr. Lagarde's office manager, Ms. Morgan, and provided her with the Bigelows' personal information needed to facilitate transferring the flood policy at the closing.
 Ms. Morgan completed the Bigelows' information on the Change Request Form and faxed the filled out form to Crescent Title to be signed by the parties at the closing.
 Between Mr. Lagarde's office's combined interactions with the Raineys, Mr. Bigelow, the Bigelow's closing attorney (Crescent Title), and possibly the Bigelows' homeowner insurance agent (Phillis Moore with Parish National Insurance), Mr. Lagarde's office clearly understood that the Bigelows were planning to assume the Raineys' flood policy.
 The Bigelows and the Raineys believed that State Farm was the Bigelow's flood insurer and Mr. Lagarde was their agent for the purpose of their flood policy.
Continuing, the Bigelows contend, based on the fiduciary agent-client relationship, that Mr. Lagarde's office had two duties to them: (i) to follow up on the execution of the Change Request Form that was faxed to Crescent Title, and (ii) to inform the Bigelows of the cancellation of the flood policy that was in the name of the Raineys at the time of cancellation.
The issue of whether a defendant owes a legal duty to the plaintiff is a question of law subject to a de novo standard of review. Haney v. Delta Petroleum Co., 99-0170, p. 4 (La.App. 4 Cir. 10/6/99), 748 So.2d 36, 38. Louisiana law imposes a fiduciary duty on insurance agents in their dealings with the insured in certain instances. Taylor v. Sider, 99-2521, p. 4 (La.App. 4 Cir. 5/31/00), 765 So.2d 416, 419.
An insurance agent who undertakes to procure insurance for another *89 owes an obligation to his client to use reasonable diligence in attempting to place the insurance requested and to notify the client promptly if he failed to obtain the requested insurance. Karam v. St. Paul Fire & Marine Ins. Co., 281 So.2d 728, 730 (La.1973). The client may recover from the agent the loss he sustains as a result of the agent's failure to procure the desired coverage if the actions of the agent warranted an assumption by the client that he was properly insured in the amount of the desired coverage. Id. To recover for losses resulting from such failure, the plaintiff must establish: 1) an undertaking or agreement by the insurance agent to procure insurance; 2) failure of the agent to use reasonable diligence to obtain insurance and to notify the client promptly of the absence of coverage; and 3) actions by the agent which warranted the client's assumption that he was insured in the amount of the desired coverage. Opera Boats, Inc. v. Continental Underwriters, Ltd., 618 So.2d 1081, 1085-86 (La.App. 1st Cir.1993).
Applying those principles to the facts of this case, we find the Bigelows cannot satisfy the first requirement. Mr. Bigelow acknowledged at trial that he was the one who handled procuring flood insurance on their residence and that he never requested Mr. Lagarde's office obtain flood insurance for them. When Mrs. Rainey, the State Farm insured, requested that Mr. Lagarde's office transfer the flood policy, she was informed by Ms. Morgan that the transfer would have to be done in writing. Ms. Morgan also gave express instructions to the Bigelows' closing attorneys regarding the need to have the parties sign the Change Request Form and return it to Mr. Lagarde's office.
It is undisputed that the necessary paperwork for transferring the flood policy the Change Request Formwas never signed at the closing. The significance of the Change Request Form is that it was the Bigelows' application to Mr. Lagarde's office for it to procure flood insurance on their behalf from State Farm. The Bigelows' failure to return that signed form to Mr. Lagarde's office resulted in the absence of an agreement to procure insurance. Given the absence of such an agreement, there was no duty on the part of Mr. Lagarde or State Farm. See 3 Couch on Insurance § 46:65 (3d ed.2008)("[i]n the absence of any agreement, or contract to effect, maintain, or renew, insurance, no duty to do so arises.") None of the facts the Bigelows cite is sufficient to impose a duty on Mr. Lagarde's agency.[6]
Our finding that Mr. Lagarde had no duty to the Bigelows is bolstered by a consideration of the actions taken by the parties before, during, and after the closing. Before the closing, Mr. Lagarde's office, through Ms. Morgan, provided the Bigelows' closing attorneys with the Change Request Form and with specific instructions regarding the parties signing the form at the closing and returning it to Mr. Lagarde's office. No one from Mr. Lagarde's office was required to attend or attended the closing. Although the Bigelows' closing attorneys may properly be faulted for failing to have the parties sign *90 the Change Request Form at the closing, there was no fault on the part of Mr. Lagarde's office for failing to have the form signed. After the closing, there was no communication between Mr. Lagarde's office and the Bigelows until after the occurrence of the flood loss caused by Hurricane Katrina. The only action Mr. Lagarde's office took during that period was to cancel the flood policy.
The Bigelows argue that Mr. Lagarde was at fault not only for canceling the flood policy but also for failing to notify them of the cancellation. We disagree. At the time it was cancelled, the flood policy was still in the Raineys' name because the transfer form had not been executed and returned to the agent. As noted, the record contains a copy of an Acknowledgment of Cancellation Request stating that the flood policy (98-RB-6291-4) was cancelled effective December 17, 2004 (the date of the closing) at the request of the policyholder (the Raineys). This notice and a check for refund premium were sent to the Raineys as the policyholders. Despite receiving this notice, the Raineys failed to inform either Mr. Lagarde's office or the Bigelows that the flood policy they believed they had transferred at the closing had been cancelled. Instead, the Raineys endorsed and deposited the check. Although the Raineys may be faulted for failing to inform the Bigelows of the cancellation of the flood policy, there was no fault on the part of Mr. Lagarde for failing to do so.
Accordingly, we find, as a matter of law, Mr. Lagarde and State Farm were not at fault. The trial court should have granted the JNOV. This finding renders it unnecessary to address the other assignments of error raised on this appeal.
DECREE
For the foregoing reasons, the judgment of the trial court is reversed.
REVERSED.
JONES, J., dissents with reasons.
JONES, J., dissents with reasons.
The unilateral actions of the Lagarde Agency in canceling flood coverage, for me, renders the Agency and its insured liable to all who suffer damages resulting from that cancellation. The Agency, as did the Raineys, knew that a sale of the property in question had occurred. The request to cancel a "homeowners" policy was not a request to cancel "all" policies. Thus, for these reasons, I would affirm the judgment of the district court, and consider the other issues raised on appeal.

ORDER
IT IS ORDERED that the Application for Rehearing filed by the Appellees, Jason Bigelow and Jennifer Lohmann-Bigelow, is hereby denied.
LOVE, J., dissents from the denial of rehearing and assigns reasons.
I respectfully dissent and would grant the rehearing.
A JNOV should only be granted "when the facts and inferences point so strongly and overwhelmingly in favor of one party that the trial court believes that reasonable persons could not arrive at a contrary verdict." Joseph v. Broussard Rice Mill, Inc., 00-0628, p. 4 (La.10/30/00), 772 So.2d 94, 99. "[T]he trial court should not evaluate the credibility of the witnesses, and all reasonable inferences or factual questions should be resolved in favor of the non-moving party." Joseph, 00-0628, p. 5, 772 So.2d at 99. "Refusal to render a judgment notwithstanding the verdict (JNOV) can only be overturned if it is manifestly erroneous." Peterson v. Gibraltar Sav. and Loan, 98-1601, p. 6 (La.5/18/99), 733 So.2d 1198, 1203.
*91 The Raineys requested that the Lagarde agency ("Agency") transfer their flood insurance policy to the Bigelows and the Agency began preparing the change request form required for the flood insurance policy transfer. The form included personal information of the Bigelows, which was provided by Mr. Bigelow when he allegedly called the Agency's office. The Agency then faxed the form to the title company for the closing with a note attached requiring the signatures of both Mr. Rainey and Mr. Bigelow. A copy of the uncompleted form was then placed in a "pending" file at the Agency. However, the change request form was not signed at the closing.
Following the completion of the sale, Mrs. Rainey telephoned the Agency requesting the cancellation of the homeowner's insurance. However, the Agency cancelled all of the outstanding policies on the property. The Agency also did not follow-up with the Raineys or the Bigelows regarding the change request form
Our original opinion cited Opera Boats, Inc. v. Cont'l Underwriters, Ltd., 618 So.2d 1081, 1085-86 (La.App. 1st Cir.1993), for the list of requirements necessary to recover from an insurer's failure to procure insurance. The requirements include:
1) an undertaking or agreement by the insurance agent to procure insurance; 2) failure of the agent to use reasonable diligence to obtain insurance and to notify the client promptly of the absence of coverage; and 3) actions by the agent which warranted the client's assumption that he was insured in the amount of the desired coverage.
Id. The original opinion found that the Bigelows did not satisfy the first requirement, which triggered the de novo standard of review. However, the Agency began to transfer the Raineys' flood insurance to the Bigelows, as referenced in the facts recited above. As for the second requirement, the Agency failed to use reasonable diligence in obtaining the transfer of the flood insurance. The Agency prepared the change request form and placed a copy of it in its "pending" file. However, the Agency failed to follow-up on the form. Reasonable diligence requires the Agency to follow-up on items located in its "pending" file. Lastly, the totality of the actions in the case sub judice warranted that the Bigelows assumed that the flood insurance had been transferred. The facts also reflect that the Raineys believed the flood insurance was transferred because Mrs. Rainey testified that she only requested that the homeowner's policy be cancelled.
Based on the actions of the Agency, I find that the trial court did not commit manifest error in denying the JNOV. The trial court determined that Lagarde owed a duty to the Bigelows based on the facts and circumstances of this case. As reasonable people could arrive at different conclusions regarding the Agency's alleged negligence in regards to the duty, the original opinion incorrectly utilized the de novo standard of review to reverse the trial court.
McKAY, J., dissents.
I would grant rehearing.
NOTES
[1] Although Mr. Bigelow testified that he spoke with someone at Mr. Lagarde's office before the closing, he could not identify the person with whom he spoke, and no one at Mr. Lagarde's office recalled speaking with him before Hurricane Katrina. Ms. Morgan testified that she used the information she received from Ms. Landry to complete the Change Request Form.
[2] Although the Raineys acknowledge they were paid twice (once by the Bigelows and once by State Farm), they indicated that they did not realize the refund check they received was for the flood policy. They, like the Bigelows, believed the flood policy had been transferred at the closing.
[3] It was stipulated that it would take $159,300 to return the Bigelows' home to pre-Hurricane Katrina status. It was not disputed that the contents of their home that were lost exceeded $20,000.
[4] This matter was removed to federal court and remanded to state court based on the federal court's finding that this caseinvolving "negligence based upon Louisiana tort and insurance law against Louisiana attorneys and a Louisiana insurance agent for their failure to procure flood insurance on their Louisiana property"is a matter for state court.
[5] At trial, the parties stipulated that the only claim the Bigelows are asserting against State Farm are in State Farm's fiduciary capacity vis-á-vis Mr. Lagarde and not in State Farm's fiduciary capacity vis-á-vis FEMA, the NFIP, the United States, or any other agency associated with the federal government.
[6] Although the Bigelows cite an unpublished federal district court decision in support of their position, we find it unnecessary to discuss that case because it is distinguishable. In that case, the request to change the insured was executed, but the agent failed to follow up and ensure the insurance company changed the covered insured. In this case, the failure to follow up pertains to following up not with the insurance company (State Farm), but with the closing attorneys.